EASTERN DIST.
*June*, 1837.

STATE
*vs.*
R. R. KEENE.

# CONTEMPT CASE.

## STATE *vs.* RICHARD RAYNAL KEENE, *

### ON AN ATTACHMENT FOR A CONTEMPT OF COURT.

The use of abusive and impertinent language and epithets, towards the court, or any one of the judges thereof, contained in a petition for a re-hearing, signed by the party and filed with the clerk, is good and sufficient grounds for an attachment, to show cause why the party offending shall not be fined and imprisoned for a contempt of court.

Where a party signs a petition for a re-hearing with his own name, using contemptuous language, and is the plaintiff in the case, he will be considered as acting in his individual capacity, although he be a licensed attorney, and punished as such for a contempt of court.

The maximum punishment for a contempt of court, committed by a party to a suit, is ten days imprisonment, and a fine of fifty dollars and the costs.

This case is an attachment for a contempt of court. On the 21st June, 1837, the defendant, who was plaintiff in a civil suit, filed with the clerk of the Supreme Court, a petition for a re-hearing, which contained the following contemptuous language and abusive epithets, against the court, and one of the judges in particular.

" R. R. KEENE, *Appellant,*  }   " Supreme Court of the State
      *vs.*  }   of Louisiana.
  R. RELF, *Appellee.*  }

" The appellant, now, premising his disclaimer of any and every view to personality or disrespect, concludes his petition of review, by a summary reference to the criticism that occupies the foreground of the judgment which has given rise to this petition. The *young judge* who drew up that judgment; (the appellant merely refers to the *official age* of that judge, without meaning to diminish his claim, whatever it may be, to the honors of physical maturity or chronological seniority, because that official age only had its beginning

---

*The civil case in which the petition for a re-hearing was presented, will be found at page 304 of this volume.

since the termination of the last session of our senate;) the *young judge,* it is repeated, who drew up that judgment, dedicated its foreground to the criticism in question, doubtless on account of his opinion of the transcendant importance of the subject matter of that criticism. And that súbject matter, forsooth, is the *language,* or *figure of speech* used by the appellant in his pleadings in the court below ; and that language or figure of speech, derived from a practice universally participated in by people of the highest rank and best education, *without the use of a single indecorous word,* was adopted by the appellant, as explained in argument, to put an end to the cavils and importunities of the adverse counsel, about the *extent* and *measure* of the·appellant's vituperation of Relf's *manœuvres* in respect of Daniel Clark's wills. And for this legitimate purpose, a legitimate metaphor, taken from the *genteel* and *fashionable,* nay, *lady-like* games of *whist* and *ecarté,* was resorted to. The appellant merely said that ' *Relf, after shuffling, cutting, and dealing Clark's will-pack, turned up for himself an executor-trump.*' "

An Ephraim Avery gospelizer indeed, who wished to render *permanent,* by synod-ratification, an evangelical call, which, through new-born zeal in the service of Calvin's sect, in dereliction of Westley's fold, had been *provisionally* conferred upon him, in the *synod's recess,* for probation, by a *nominator* for *synod-confirmation* of candidates for *holy orders* and *holy offices;* such a gospelizer, indeed, might well enough have made that metaphor a text for the out-pourings of his hypocrisy and cant. But surely the appellant could never have foreseen or anticipated that it would have been made the subject of animadversion, now, after having passed unscathed through *the fiery furnace below;* especially by a judge, who, in his recent character of attorney of or for the United States, when, as such, he was bound by his elevated station, to set an example to his brethren of the bar, of courtesy and respectfulness towards a brother lawyer, distinguished as much for his urbanity and refinement as he is for his knowledge and eloquence, used such language, and that,

too, in *open court*, in *high-pitched tone*, as shocks the ear of good breeding, and puts delicacy to the blush !

Relf, doubtless from a consciousness of the propriety of the appellant's metaphor, acquiesced in the use that was made of it, for the record furnishes no trace of his opposition thereto. But Soulé, from a sense of injury, was not acquiescent in the belligerent action of the United States' attorney ; for, besides putting in, *instanter*, his *contestatio litis*, he *reconvened* upon his warlike adversary, with a demand for *satisfaction in chivalry*. But lo ! that adversary, in *hallelujah accents*, plead a *peremptory exception*, founded, not in *Louisiana law*, but in the code of *holy writ !*

" Hence, then, does it appear, that to one and the same personage, in his character of *national advocate*, a *peremptory exception* to a *reconventional demand*, was *every thing*, although that exception is unknown to the laws and customs of Louisiana ; whilst, in his character of a *state judge*, a peremptory exception, founded on Louisiana law, goes for *nothing !*

" The appellant, claiming due weight for the full and irresistible proofs in the record, that show that the verdict given against him was *contrary to law and evidence;* and being deeply impressed with the wrongs inflicted upon him by the judge *à quo*, in the first place, in letting a garbled and mutilated document go to the jury, without the rightful and essential accompaniment of the schedule to which that document referred ; and, in the next place, in biassing and warping the sentiments, and exciting and bespeaking the sympathies of the jury, in favor of the appellee, by trampling upon the law of reconvention and of peremptory exceptions, thereby giving them, the jury, to understand that the defendant, Relf, was a *fit candidate for damages*, because the plaintiff, Keene, in accordance with his rights as a citizen, and his duties as an advocate, had shown, incontestibly shown, that the fate of Daniel Clark's last will and estate was such as he, Keene, had set forth in his allegations in relation thereto ; the plaintiff and appellant, Keene, being

thus impressed, prays of this honorable court a new hearing in this case; and moreover, prays that this new hearing be decided upon by a full bench of senate-sanctioned judges."

"RICHARD RAYNAL KEENE, p. p."

This petition was handed to the judges the same evening after it was filed, and one of them took it to his chamber for examination. On returning to court the next day, the judge communicated the contents and extraordinary character of the petition, to his colleagues.

On consultation it was ordered, that an attachment issue against Richard Raynal Keene, Esq. to show cause why he should not be punished for a contempt of court. On the 23d of June the court met, and the defendant was brought into court, by the sheriff of the city and parish of New-Orleans.

*Mazureau,* attorney general, appeared on behalf of the state, and read the part of the petition for a re-hearing, relating to the contempt. He commented on the violent and abusive language which it contained, and moved that the defendant be fined and imprisoned for a contempt of the judicial tribunal and authority of the state.

*Keene, in propriâ personâ,* defended, and urged that the language used, was not contemptuous and libellous, but only cutting and severe, which he intended it should be; that it was decorous in the manner, and such as might be used in a lady's drawing room, without giving offence to the most chaste or delicate ear.

2. The defendant further contended, that if he was, in any manner, guilty of a contempt, it was in his capacity of attorney and counsellor at law. He relied on the statute of March 27th, 1823, and the first section, to show that an attorney at law could not be fined exceeding one hundred dollars and imprisoned, not exceeding twenty-four hours. He also cited the second section of this act, and contended, that according to its provisions, no contempt by an attorney at law could be committed, unless what was said or done

had been done in the presence of the court.   1 *Moreau's Digest,* 281.

*The Attorney General,* in reply, showed that the contempt in this case, was committed by the defendant, in his private capacity, as a party plaintiff in the suit, in which he applied for a re-hearing ; that the law in such cases is to be found in the Code of Practice.   It was unnecessary in this case whether the contemptuous language and abusive epithets were used in court or out of it ; it was equally a contempt if it was contained in a written document addressed to the court and signed by the party, and which the court were bound, officially, to notice.   This, he contended, was a gross contempt, and should be punished to the extent of the law. He cited the 131st article of the Code of Practice, as follows :

" The judges of the Supreme, District, and Parish Courts, have the power to punish all contempts of their authority, *by fine, not exceeding fifty dollars,* and imprisonment for a period not exceeding *ten days for each offence of that kind.*"

*Martin, Presiding Judge,* pronounced the sentence of the court, as follows :

The pains which the defendant has taken to read, for the information of the bar and the by-standers, the petition he had previously filed in this court, for a re-hearing in his case, dispenses us with the necessity of noticing, *particularly* the different parts of it, which have no reference to the judgment of which he complains, but are evidently introduced to vent his abuse against the member of this court, who was in that case its organ in drawing up its opinion.

This abuse is of such a nature, and the facts which are stated are so totally unconnected with the object of the application, that the attack on this judge cannot be attributed to an excess of zeal in an endeavor to attain that which the defendant might consider as his right.   Most of the facts alleged are absolutely irrelevant and untrue.   The attack was entirely unprovoked ; the defendant had received in the inferior court that measure of justice to which he was entitled at the hands of a jury, and the judge who presided at the

trial, and who declared his satisfaction with their verdict. It turned on mere matters of fact, and it was not pretended that the jury had erred on any point of law. Nothing was therefore offered in this court, which might authorize us to interfere and set aside the finding of those, who in these United States, are considered as the constitutional judges in such matters.

There were two bills of exceptions, and in both of them the opinion of the District Court was so evidently and palpably correct, that the member of this court, who prepared the opinion, thought any comment on them useless. The conclusion and prayer shows, that the defendant asked from us what he evidently knew was not in our power to grant, to wit : a re-hearing before a full bench of *senate-confirmed judges*.

This court is of opinion with the attorney general, that the defendant, although he be a licensed attorney, cannot be considered in that capacity in the present case. He had brought the suit in which the judgment complained of was pronounced, in his own name for himself in *propriâ personâ*, and not as the attorney of another. No man can be his own attorney or counsellor ; the words attorney and counsellor, essentially imply, *ex vi terminorum*, the existence of a client as their correlative. Attorneys instituting suit for themselves, stand in the management of them on the same footing as any of their fellow-citizens, and cannot claim the indulgence, which the law grants to those, who in defending the rights of others are carried by an intemperate zeal beyond the bounds of moderation.

In the manner in which the defendant has carried on his defence, we have seen nothing that either exculpates him or alleviates the offence. We do not remember a case of grosser contempt, and we doubt whether any are to be found in the books.

The sentence of the court, is, that the defendant, Richard R. Keene, pay a fine of fifty dollars, and be imprisoned during the space of ten days, and until he pay the fine and costs. Mr. Sheriff, he is in your custody.

76·

---

Eastern Dist.
June, 1857.

STATE
vs.
R. R. KEENE.

The use of abusive and impertinent language and epithets towards the court, or any one of the judges thereof, contained in a petition for a re-hearing, signed by the party and filed with the clerk, is good and sufficient grounds for an attachment, to show cause why the party offending shall not be fined and imprisoned for a contempt of court.

Where a party signs a petition for a re-hearing with his own name, and is the plaintiff in the case, he will be considered as acting in his individual capacity, although he be a licensed attorney, and punished as such for a contempt of court.

The maximum punishment for a contempt of court, committed by a party to a suit, is ten days imprisonment, and a fine of fifty dollars, and the costs.