## THE STATE v. PIERRE SOULÉ.

Where the evidence of a contempt of court is before the court, and the offence palpable, a rule to show cause why an attachment should not be issued, is unnecessary. In such a case an attachment may be issued in the first instance. The practice of taking a rule, arose out of a distinction between direct and consequential contempts, and was resorted to, where it became necessary to procure evidence not before the court.

A court may propound interrogatories to an attorney against whom an attachment has been issued for a contempt, for the purpose of ascertaining whether he was the author of the petition containing the contemptuous language for which the attachment was issued, and his intention and motive in writing it ; and the court may require an answer to them. Nor is this right a violation of the provision of the 18th sect. of the 6th article of the constitution, which declares, that "in criminal prosecutions no one shall be compelled to give evidence against himself."

Contemptuous language contained in a petition, prepared by an attorney, for a rehearing of a cause pending before the Supreme Court, though filed with the clerk without a formal motion in court, will subject the offender to punishment for a contempt. Stat. 27 March, 1823, § 3. Such a petition must necessarily pass under the notice of the court, while in session ; and, being required by art. 912 of the Code of Practice to be presented when the court is in session, in the absence of proof to the contrary it will be presumed that it was filed according to law.

ON Saturday, the 6th of July, 1844, the following order was entered, by direction of the court, on the minutes of its proceedings :

It is ordered by the court, that an attachment issue, directed to

the sheriff of the parish of Orleans, commanding him to attach and bring before this court, on Tuesday next, the 9th of the present month of July, at ten o'clock A. M., the body of Pierre Soulé, one of the attorneys and counsellors of this court, to answer for a contempt of this court and its authority, by addressing to it, in his petition for a re-hearing, filed in open court, on the 3d day of July, in the year 1844, the following disrespectful language :

"Your decision on the latter cannot be viewed by the appellees, otherwise than as a deplorable, but too often repeated instance of the favor and protection which the most unblushing fraud and reckless turpitude may find sometimes, if not in the actual impotency of the laws, at least in the levity with which they are administered; and I do now come forth, in the name and on behalf of those appellees, to demand that you will reconsider your decree, and grant them a re-hearing." See pages 3, 4, of the printed pamphlet, filed.

"Is such a man to be protected by the decree of this court, and to be shielded, in his shameful attempt to ruin his wards, behind a quibble of more than doubtful origin, and which consecrates a most odious, a most immoral, and most revolting legal heresy." See pages 5, 6, of same pamphlet.

"I dare not qualify according to its merits, the contemptuous sneer conveyed by the proposition." See page 7, of same pamphlet.

"I would readily admire the motive, and applaud the instinctive humanity, which has prompted this court so warmly to advocate, in the present instance, the sacred obligations which bind the father to his children, were it not, that your honors seem to have entirely lost sight of other children who possess as good a title, and can plead as respectable a claim to their protection and justice. That their sufferings and ruin should have been disregarded, for the sake of those who seem to occupy such a hot place in your hearts and partiality, is beyond my comprehension ; and although your honors may not be disposed to understand that a father cannot provide for the maintenance and education of his children with means and resources derived from the pocket of others, I shall take the liberty to furnish them with such authorities as will convince the most incredulous, that they have

misunderstood the law and misapplied its provisions." See pages 11, 12, of same pamphlet.

" His Honor, Judge Simon, emphatically declares, that where *co-heirs cannot complain, creditors have no right to interfere.* This we have adverted to as a monstrous heresy, which would stamp any legislation with the most revolting immorality. Let such a principle have its full effect, and the greater the spolia-tions and frauds, which a father may commit against his creditors, to enrich his own children, the safer will be the spoils in the hands of the latter ; because, forsooth, it has seemed clear to your honors, *that if co-heirs cannot complain, creditors have no right to interfere.*" See page 16, same pamphlet.

" 1 abstain from further comments, and close here the prayer of the appellees, with the firm conviction that, after perusing the above remarks, your honors will deem it neither just nor safe to refuse the re-hearing demanded." See page 16, same pamphlet.

It is further ordered that a copy of the foregoing order, and of the interrogatories hereto annexed, be served on the said Pierre Soulé, and that he be ordered to answer said interrogatories on oath, which are as follows ;

1st. Are you, or are you not, the author of the printed petition for a re-hearing, filed in the Supreme Court in the case of *Armand and Alfred Mercier* v. *J. F. Canonge,* their tutor, on the third day of the present month of July, 1844 ?

2d. Are not the extracts in the foregoing order, from said pe-tition, truly and correctly made ?

3d. In writing, or using the language or expressions above quoted, was it your intention, purpose, or motive, either directly or indirectly, to impeach the integrity, character, or motives of the members of this court collectively, or separately, or in any manner to cast any reflection or imputation on the judicial in-tegrity of all, or any one, of said members ?

4th. In using the language and expressions hereinbefore set forth and stated, was it your intention, purpose, or motive, either directly or indirectly, to commit a contempt towards this court, or upon its authority, in any manner whatever ?

The defendant having been brought into court by the sheriff

in obedience to this order, read the following protest against the proceeding :

" The sheriff has been commanded to attach and bring my person before this tribunal, that I might answer for a contempt of court, alleged to have been committed on the occasion of the re-hearing prayed for in the case of *Armand & Alfred Mercier* v. *J. F. Canonge*, their tutor. I now come in the custody of the officer who has apprehended me, and stand at this bar, awaiting your further mandate and decision.

" In the meanwhile I most solemnly protest against the arbitrary exercise of authority, whereby you have ordered my arrest without a previous hearing, and in the absence of any cause which could justify, in the remotest degreee, the suspicion that I might be found unwilling, or reluctant, to obey your summons.

" I also peremptorily refuse answering under oath, the interrogatories which you have propounded to me. I know of no rule of law which justifies such a proceeding, unless you should consider yourselves as plaintiffs in a suit, instituted against me in the name of the State.

" Admitting, however, that such a rule does exist, I would still be protected against its being enforced in the present instance, by the elementary principle which provides, that *no one shall be asked any question the answering to which might subject him to any the least punishment.*

" Yet it would become neither my dignity as a man, nor my independence as a lawyer, to abstain from avowing openly, that I am the author of the petition referred to in your rule, and that the extracts quoted from the same are literally correct.

" I do, therefore, now enter my most unqualified acknowledgment to that effect.

" As to the bearing of the expressions which I have used—as to my motives, views and object, in applying them as I have done in this case, the petition must speak for itself.

" I am unconscious of having stated a fact which is not in strict accordance with the truth, or of having advanced a doctrine which is not maintained by the most positive enactments of our law, and by the authorities of our ablest and most respected commentators.

" My language may seem discourteous, and perhaps wanting, in some degree, of that respect which ought to surround the judges of this court; but there is an excitement which flagrant injustice, and the temporary triumph of an unhallowed cause, kindles some-times in one's bosom, that will silence every other feeling but that which resents the injury sustained, and prompts the sufferer to give vent to his ire, and to speak forth his indignation.

" I shall not proceed any further. I feel that I am treading on burning ground; and a higher consideration than that of my personal interest and advantage commands imperiously, that I should not expatiate at any length, on the matters which have brought me before you.

" I stop here, therefore, ready to meet your decree with submission, provided it adjudge nothing which be not within the strict limits of your legal authority and discretion."

On Thursday, the 11th of July, the judgment of the court was pronounced by

GARLAND, J. The defendant, one of the members of the bar of this court, being brought into court to answer for a contempt of its authority and dignity, commences by a protest against his being arrested without a previous hearing, and in the absence of any cause to justify it. He also refuses to answer the interrogatories propounded to him by the court, as he says there is no rule of law which justifies such a proceeding; and that if there be, he is protected by that provision of the constitution which says, that no one, in a criminal prosecution, "shall be compelled to give evidence against himself." He further avows, that he is the author of the petition in which the language and expressions complained of, is contained; and he says, " as to the bearing of the expressions," and the " motives, views and object" he had in applying them as he has done, " the petition must speak for itself." The protest then states some other matters, not presenting any legal question, but which it may be necessary to notice in a subsequent part of the opinion.

The power of this court to punish as contempts, acts calculated to bring the tribunal itself into disgrace, and its authority into disregard, is undoubted. In relation to attorneys at law, a pre-

existing power was recognized by an act of the Legislature, passed in 1823, (B. & C.'s Dig. p. 23;) and is also conferred by articles 131, 132 of the Code of Practice, as well in relation to attorneys at law as to other persons. Blackstone, in the 4th book of his Commentaries, p. 286, says, the power to punish for contempts is as ancient as the law itself. "For laws, without a competent authority to secure their administration from disobedience and contempt, would be vain and nugatory;" therefore the power to suppress contempts "by an immediate attachment of the offender, results from the first principles of judicial establishments," and is inseparable from them. The same learned writer also tells us; "If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, without any farther proof or examination." The process of attachment is intended to bring the party into court; he can give bail when arrested, for his appearance; and in flagrant cases of contempt, it issues in the first instance. 1 Salk. 84. Strange, 185, 564. 1 Yeates' Penn. Rep. 1. 11 La. 596. The practice of taking a rule to show cause why an attachment should not issue, arose out of a distinction between direct and consequential contempts, and where it becomes necessary to procure evidence not before the court; but when, as in this case, the evidence of the contempt is before the court, and the offence is palpable, no rule to show cause is necessary.

The allegation of the defendant, that his arrest is an "arbitrary exercise of authority," is without the slightest foundation in law or in fact. A contempt of court is considered in some degree, as a criminal act; as much so as an assault and battery, a libel, or other offence of that kind. Blackstone, and other writers, treat of it under the head of public wrongs, and say that the trial must be summary, so that the punishment may be prompt, and the character of the tribunal vindicated. The defendant seems to have regarded the charge against him as criminal to a certain extent, when he invoked the protection extended by the constitution to those charged with crimes only. The doctrine is new to us, and, we think, cannot be sustained by any authority, that a party is entitled to a previous hearing before he can be arrested. Arrest, as we understand the law, is a preliminary

to a hearing. The arrest of persons, both in civil and criminal cases previous to their being heard, is a thing that occurs daily ; and, we suppose, it is the first time the idea has been suggested, that before a magistrate can issue a warrant, or a court order a writ of arrest, the party against whom it is proposed to direct such process must have "a previous hearing." To authorize the issuing of warrants or writs of arrest, the tribunal directing them to issue, must have before it such evidence as will justify it in doing so. Such evidence we had before us, when we directed the attachment to issue ; and, until the defendant can show that he is entitled to some special exemption or privilege, he will be treated as any other citizen. A precedent for the course now pursued, is to be found in 11 La. 599.

The right of the court to propound interrogatories to the defendant, is as unquestionable as the right to attach his person. The practice is almost universal, and is not deviated from, except in those cases where the court have other evidence before them upon which they can act. When presented, the court has a right to have them answered ; and we do not believe the defendant is protected by the clause of the constitution he invokes. The interrogatories in this case were not propounded for the purpose of compelling the defendant to give evidence against himself ; but to enable him, if he could, to exculpate himself from the alleged contempt. This he has refused to do, and thereby aggravated the first offence. 4 Blackstone, 287. 1 Dallas, 319. 3 Yeates' Penn. Rep. 438.

The second section of the act of 1823, (B. & C.'s Dig. 23,) says, that "nothing shall be construed, or taken as a contempt of court by an attorney, but what shall be said, done, or committed, directly in the presence or hearing of the court, during the sitting of the same." By art. 912 of the Code of Practice, a party, or his counsel, must "apply to the court for a new hearing in the cause, and for this purpose shall present a petition," &c. From this it is clear, that the petition must be presented when the court is in session ; it cannot, according to the plain provision of the article, be done at any other time ; and we have a right to presume, that the defendant complied with the law, and presented his petition during the sitting of the court ; therefore, the con-

tempt was committed during the session. In the case of the *State* v. *Keene*, (11 La. 596,) it was settled, that the use of abusive and impertinent language in a petition for a re-hearing, was a sufficient ground for an attachment, and for punishing the party for a contempt. The decision given in that case has been universally approved of, as we believe, and we see no reason to doubt its correctness. An application for a re-hearing in this court, is similar to an application for a new trial in the inferior tribunals, and must necessarily pass under the notice and supervision of the court whilst in session. To facilitate business in this court, it has been allowed to parties to file their applications with the clerk without a formal motion; but this practice was founded on the supposition and confidence reposed in the members of the profession, that they would not insert in their petitions any matter impertinent to, or abusive of, the court, or any thing calculated to bring the administration of justice into contempt or disrepute. No party, or his counsel, has a right to have any paper or document filed without the knowledge and consent of the court; and it would be strange indeed, if it were permitted to counsel deliberately to write out and file among the records of the court, in the recess between its sittings, the most opprobrious calumnies and abuse of the highest tribunal in the State, without any responsibility, when if the same language had been used in the heat and excitement of an oral argument, it would instantly have consigned the speaker to the walls of a prison. Common sense, law, and justice, all forbid, that a party shall secretly place among the records of this court, with impunity, a document which the author of it would not have been permitted to read in public, and which, if he had attempted to read, would have brought upon him certain punishment. But, in this case, the defendant has not shown that the document in question was filed in the recess of the court; and we, therefore, have a right to presume, that it was filed according to law, and that he is responsible for it.

The defendant has further said, that as to the expressions used, and as to his motives, views, and objects, in applying them, the petition must speak for itself. No one can read the extracts from the printed pamphlet stated in the order directing the arrest of the defendant, after this statement, without being satisfied, that

it was his intention, so far as he was capable of doing so, to abuse and vituperate the judges of this court, and, as much as the power existed in him, to bring them and the administration of justice in this State, into disrepute. The purposes and objects which the defendant may have in view, in effecting this end at this time, we shall not enter into or discuss, but shall content ourselves with a vindication of the motives, acts, and authority of this court, in the case in question,' and a refutation of as unjustifiable and malicious a libel as was ever published or written.

During the last month, after it was announced by the presiding judge of the court, that no causes, other than those then fixed for trial, would be argued or considered, the defendant applied to the judges of this court collectively and individually, and urged upon them the propriety of taking into consideration the case of *Mercier* v. *Canonge et al.*, upon written briefs, representing that it was a suit rather of a friendly character, and intended to settle a succession, about which difficulties existed, but which, if delayed, would cause serious injury to some of the parties. Under these circumstances, the court agreed that the cause might be submitted upon briefs to be filed, with an understanding that the case would be considered and decided, if time permitted. In consequence of the anxiety of the defendant, and our own desire to settle what was supposed to be a family difficulty, we did, at some personal inconvenience, and somewhat to the prejudice of other suitors, take the case into consideration, and give it as thorough attention as we could bestow on any case not argued, and pressed as the court was with business, near the end of a long term. Of six points raised for our decision, three were decided in favor of the clients of the defendant, and three against them ; upon which three points the defendant, in behalf of his clients, has applied for a re-hearing, and in his petition for it, makes imputations upon, and insinuations relative to the judicial integrity of this court, which are unfounded in fact, and calumnious in the highest degree. These expressions are set forth in the order directing the attachment to issue, and need not be repeated.

As to the ire which the defendant says he designed to " vent," and the indignation he has expressed in consequence of our judg-

ment, we estimate it as lightly as we do the menace in the printed pamphlet, that it would not be "*safe*" for this court to refuse the re-hearing. No apprehension of any thing the defendant can say or do, will induce us to swerve from the duty we owe to the country and ourselves. We shall pursue such a course as appears to us just and proper, regardless of the approbation or disapprobation of interested parties, seeking only the approval of our own consciences, and the support of those for whose common benefit the administration of the laws has been entrusted to our hands.

Knowing as we do, that a government like ours, rests alone upon obedience to the law, and that its supremacy is the only bulwark and safeguard for every civil right; and believing that the defendant is as fully impressed with that opinion as we are, we regret very much, that one, occupying his position both at the bar and in society, should have set so pernicious an example to the younger members of the profession, and to his fellow citizens; and we hope that the example we shall make of him, will be a warning to them not to do likewise.

The sentence and judgment of the court is, that the defendant, Pierre Soulé, be imprisoned twenty-four hours in the jail of the parish of Orleans; that he pay a fine of one hundred dollars and the costs of this proceeding; and that he stand committed until the fine and costs are paid.

In the case of *The Louisiana State Bank* v. *Marie Noel Cordier*, from the Parish Court of New Orleans, the judgment below was affirmed on appeal in New Orleans, with damages, during the period embraced by this volume.