## MARTIN CASEY v. THE STATE.

A contempt of court is not an *offence* within the meaning of the Penal Code. Contempts are matters *sui generis*, and not criminal cases in the sense in which crimes are treated of by writers upon criminal law. They are said to be of a criminal nature, because they are not properly civil suits, and because they involve the idea of the punishment of unauthorized acts.

The conviction of a practising attorney-at-law for contempt of court, under the statute which authorized a trial by jury for the alleged offence, forms no exception to the rule more than once laid down by this court, that appeals do not lie from judgments of the District Courts imposing fines or imprisonment for contempts committed by persons who are *not* attorneys-at-law.

The right of appeal is given by the statute, in cases where the contempt involves fraudulent or dishonorable conduct, or mal-practice on the part of the attorney, and where the District Court pronounces judgment striking him from the roll of attorneys.

APPEAL from Rusk.    Tried below before the Hon. C. A. Frazer.

The alleged contempt of the appellant consisted in remarks made to the court in the conduct of a cause then being tried, in which he was acting as counsel for one of the parties, and which were construed as disrespectful to the presiding judge.    The proceedings against him involved no question of mal-practice, or fraudulent or dishonorable conduct.

*Attorney-General*, for the State.—In this case a fine of one hundred dollars was imposed on the appellant for contempt of court.    A trial by jury was demanded, and the case was accord-

Casey v. The State.

ingly submitted to a jury (see Art. 53, O. & W. Dig.,) and a verdict of fifty dollars was returned. It is from the judgment of the court founded on the verdict that the appeal was taken to this court.

The proposition I submit is that an appeal will not lie from an order of the court imposing a fine for contempt in a case like the present. It is true that this court has entertained appeals from judgments for contempt in several cases. But it is believed that the appeal in each of these cases was under a special statute authorizing appeals in cases where the effect of the penalty was to strike an attorney from the roll. (Art. 51, O. & W. Dig.; Dillon v. The State, 6 T. R., 55; Floyd v. The State, 7 T. R., 215; Jackson v. The State, 21 T. R., —.)

There is no statute of this State authorizing appeals from the imposition of fines for contempt in cases like this. On the contrary, Art. 468, Hart. Dig., expressly denies the right of appeal in cases of contempt of court. The legislature, aside from any other consideration or ground, has the right under the 3d section of the 4th Art. of the State constitution to pass the law. (Floyd v. The State, 7 T. R., 215.)

It may be insisted that the article which denies the right of appeal in cases of contempt was repealed by the Code of Criminal Procedure and was superseded by its provisions. But it is believed that this position cannot be maintained. The Code of Criminal Procedure only repeals such laws as it does not embrace, which " regulate or refer to the prevention, suppression, prosecution and proceedings for the punishment of crime." (Sec. 4, Final Tit., C. C. Pro.) Art. 27, Ib., authorizes resort to common law in cases where the Code fails to furnish a rule for the purposes mentioned. Art. 1, Ib., declares that the C. C. Pro. " is intended to embrace rules applicable to the prevention and prosecution of offences against the laws of this State," &c. Laws, then, which do not relate to the suppression or prosecution of offences do not come within the scope of the Code C. P., and are not repealed or superseded by its provisions. If a contempt, then, is not an offence within the meaning of the Penal Code, the laws which regulate it are not repealed by the Code of C. P. What then is an offence?

As defined by the P. C., it "is an act or omission forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed in this Code." A contempt cannot come within this definition because no punishment is prescribed for it in the Code. Besides this, a contempt is defined to be "a willful disregard or disobedience of a public authority." Bouv. L. Dic., 308. The law of contempt does not come within the purview of either of the Codes. It rests upon its own peculiarity, and while it can not be said to be strictly within the range of the civil law, it is equally distinct from laws relating to crimes and punishments. (Yates v. Lansing, 9 John. R., 395.)

The legislature, viewing the subject in this light doubtless, classes the act authorizing courts to impose fines for contempt with the civil statutes. (See Art. 381, O. & W. Dig.)

It will hardly be insisted that the article last cited authorizing the imposition of fines for contempt has been repealed by the Code of Criminal Procedure. If so, with what reason can it be urged that a regulation which relates exclusively to the exercise of authority under this law, was repealed by the provisions of the Code? That it was not the intention of the legislature to repeal the laws relating to contempts is manifest from the language of the Code of C. P. itself. (See Art. 392, C. C. P.)

But, admitting for the sake of argument that the Code of C. P. repealed all statutory law relating to contempts, it follows that as there are no regulations concerning the power to impose fines for contempt or regulating its exercise prescribed in the Code of C. P., that resort must be had to the common law to find the rules by which courts are to accomplish the objects of their institution. (Art. 27, C. C. P.)

The District Court in this State was established by the constitution, and it was invested, implicitly at least, with the powers necessary to carry out the purposes of its organization. Unless it can impose penalties for contempt, the object of its creation may be easily defeated. It may be well doubted, therefore, if the legislature could deprive the court of this power, even had it attempted such a thing.

Every court of record, and especially the courts established by

the constitution, "have the inherent power to fine for contempt, imprison for contumacy and enforce the observance of order," &c. This power cannnot be dispensed with, because it is necessary to the exercise of all other powers, nor is this power derived from the statute. (U. States v. Hudson & Goodwin, 7 Cranch., 32; Anderson v. Dunn, 6 Wheaton, 227; 2 Bacon Ab., 633; Bouv. Law Dic., 1 vol., 302.)

Independent of the statute it is a well settled doctrine that appeals will not lie from penalties for contempt in any case. (*Ex parte* Kearney, 7 Wheaton, 38, and Mr. Blackstone's opinion therein quoted; see also Chan. Kent's opinion in case of Yates v. the People, 6 John. R., 427.)

In the case of Crow v. The State, decided by this court at its last term, the doctrine is broadly announced, that, "appeals will not lie in cases of contempt." I am unable to perceive any distinction between the principle settled in that case and that involved in the case under consideration.

The appellant gave notice of appeal and entered into recognizance, to abide the judgment of the Supreme Court, as directed by the Code of C. P., in cases of appeals; and yet there is nothing in the P. C. or C. C. P. which authorizes appeals in cases of contempt, or prescribes the manner of perfecting such appeals.

In consideration of the foregoing views it is submitted that this case has been improperly brought to this court. Therefore, it is moved by the attorney-general for the State, that this case be stricken from the docket of this court, because this court has no jurisdiction of the same.

BELL, J.—On the 7th day of November, A. D. 1859, the presiding judge of the District Court for the county of Rusk imposed a fine of one hundred dollars upon the appellant for a contempt of court. The appellant, who was an attorney and counsellor-at-law practicing in the court, demanded a trial by jury under the provisions of the act of the 11th of February, 1854. A jury was called, and the matter was submitted to them, the appellant pleading not guilty of the contempt. The jury found the appellant guilty of the contempt, and assessed his punishment at

a fine of fifty dollars. The appellant moved for a new trial, which motion was overruled by the presiding judge.

The appellant gave notice of appeal, and entered into recognizance as in cases of misdemeanor. The Attorney-General has submitted a motion to dismiss the appeal, on the ground that an appeal does not lie to this court from the judgment of the District Court imposing a fine upon an attorney for a contempt.

This court has more than once held that appeals do not lie from judgments of the District Courts imposing fines or imprisoning for contempts committed by persons who are not attorneys-at-law. (Floyd v. The State, 7 Tex. R., 215; Jordan v. The State, 14 Tex. R., 436, and the case of Crow v. The State, decided at the last term at this place.) These decisions were founded upon the provision of the first section of the act of the 13th of May, 1846, "regulating appeals to the Supreme Court in criminal cases."

There are cases in which this court has entertained appeals from judgments of the District Courts striking attorneys from the roll and revoking their license to practice in the courts. Such are the cases of Dillon v. The State, 6 Tex. R., 55, and Jackson v The State., 21 Tex. R. The appeals were entertained in these cases, because the right of appeal in such cases is given in express terms by the eighth section of the act of 12th May, 1846, entitled an act "To regulate the license and practice of attorneys and counsellors-at-law."

It is contended here that the first section of the act of May 13, 1846, regulating appeals to the Supreme Court in criminal cases, is repealed by the 719th Article of the Code of Criminal Procedure. That article provides that "an appeal may be taken by the defendant in every case where judgment of conviction has been rendered against him in the District Court." It is true that proceedings in cases of contempts are treated by the courts as in the nature of criminal proceedings. In the celebrated case of Crosby, Lord Mayor of London, who had been committed to the Tower on a warrant signed by the speaker of the House of Commons, and who applied to the Court of Common Pleas for a writ of *habeas corpus*, Lord Chief Justice DeGrey, treating the House of Com-

Casey v. The State.

mons as a court, said : "When the House of Commons adjudges anything to be a contempt, or a breach of privilege, their adjudication is a conviction, and their commitment in consequence is an execution." This language was recited with approbation in the case Ex Parte Kearney, 7 Wheaton, by Judge Story, and this latter case was quoted by the present chief justice of this court in the case of Floyd v. The State, where cases of contempt were said to be "of a criminal nature." These matters of contempt are said to be of a criminal nature because they are not properly civil suits, and because they involve the idea of the punishment of unauthorized acts. They are matters *sui generis*, and not criminal cases in the sense in which crimes are treated of by writers upon criminal law. An offence is defined by our Penal Code to be "an act or omission forbidden by positive law, and to which is annexed, on conviction, any punishment prescribed in this Code." The Penal Code nowhere treats of contempts of court. It follows, therefore, that a contempt of court is not an offence within the meaning of the Penal Code.

And we are of opinion that, inasmuch as the provisions of the Code of Criminal Procedure are intended to prescribe the manner in which the court shall proceed in the trial of offences against the laws of this State, the 719th Article must be understood to relate only to judgments of conviction for offences known to the law as such—to offences which are prosecuted by indictment or information. And in the use of the word *information* here, we mean it in the sense in which it is used in the Code of Criminal Procedure, and not as applicable to motions or relations by attorneys for the purpose of having another attorney stricken from the roll.

It will be observed that the only case of contempt in which the statute gives the right of appeal, is where the contempt involves fraudulent or dishonorable conduct, or malpractice on the part of an attorney, and where the District Court pronounces judgment striking the attorney from the roll. The District Court has no authority to strike an attorney from the roll for contempt merely. It can only be done where the contempt involves malpractice or fraudulent or dishonorable conduct. And when the District

25Y

Court strikes an attorney from the roll, and revokes his license, it is reasonable and proper that an appeal should lie to this court as in ordinary cases where rights are involved; for in such cases the appellate court does not inquire into the contempt, except so far as it is incident to the malpractice, or the fraudulent or dishonorable conduct, but the inquiry is directed to the malpractice or to the fraudulent or dishonorable conduct, which are matters of fact, and proper subjects for judicial inquiry by an appellate court. Besides, where a right so dear as the right to practice a respectable and lucrative profession, and which is in the nature of a right of property, is involved, the law acts wisely when it prescribes moderation, and secures the right of appeal. But not so in matters of contempt merely. It is in the very nature of a contempt that the court to which the contempt is offered is the best judge of the question of contempt or not. Much depends on the manner in which words are spoken. A gesture which is not susceptible of description may yet be palpably contemptuous. And it would be extremely unwise in any government to strip the judicial tribunals of the power to protect themselves from insult, either by denying that power directly, or by placing obstacles in the way of its exercise so as to virtually destroy it. It was well said by Judge Kent, (*clarum et venerabile nomen*,) in the case of Yates, in 4 Johnson, that "the power to punish for contempts is given to the courts only for their preservation, in order to enable them to repel insults, to protect suitors, to support their process, and to be an asylum from violence and oppression." Surely these great ends can never be put in the balance to be weighed against the danger that a judge will sometimes do wrong, or that an individual may sometimes be harshly dealt with. Those who have looked with the greatest jealousy upon the power of courts and legislative bodies to punish for contempts, have founded their arguments mainly, indeed entirely, upon the probability that such power will be abused, forgetting that there must be some ultimate repository of discretion under every form of government. "The idea is utopian," said Mr. Justice Johnson, in the case of Anderson v. Dunn, 6 Wheaton, "that government can exist without leaving the exercise of discretion somewhere. Public security

against the abuse of such discretion must rest on responsibility and stated appeals to public approbation."

It is also contended in this case that a fine imposed upon an attorney for a contempt of court should be distinguished from an ordinary case of a fine for contempt, because the statute of 1854 gives the attorney the right to a trial by jury, with the privilege of pleading as in a case of misdemeanor. It is insisted that the proceeding is thus transformed into a trial for a misdemeanor, and that an appeal ought to lie as in other cases of trials for misdemeanors. We are of opinion that the right of appeal does not result from the right which the statute gives the attorney to appeal to a jury.

The right to appeal to a jury was probably given to attorneys in these cases, because, from the nature of the duties of attorneys, and from the relations which they sustain to each other and to the presiding judge of the court, there is greater probability that they will be betrayed into indiscretions which might be taken to be contempts of court, than that the same things will be done by other persons. But the wisdom of the legislature would probably have been more easily vindicated if attorneys, equally with all other persons, had been subject to prompt and certain punishment for any violation of that decorum which is due to the courts in which they practice their profession. It is proper that the power of judges to punish for contempt should not be unlimited in its extent, because judges are but fallible men, and they should not be entrusted with a power that could possibly be used to the ruin or serious injury of any citizen. But their power to punish for contempts should be certain.

Experience proves that in modern times, and in this country especially, such power is seldom used arbitrarily or capriciously. Judge Kent, in the case in 4 Johnson, repeats the observation of Montesquieu, that "the judicial is, from its very constitution, the feeblest department in government." And he remarks that "the tendency of the times is rather to induce the courts to relax than to increase the severity of their ancient discipline, to exercise their power over contempts with extreme moderation, and

never to resort to it but when urged by the most commanding necessity."

These observations, coming as they did from one whose career has shed so much lustre upon the legal annals of his country, ought never to lose their weight. And it is with much satisfaction we notice that the legislature, at its last session, amended the act of 1854, so as to take away from attorneys the right to appeal to a jury in ordinary cases of contempt, securing the right of trial by jury only where the inquiry involves the malpractice, or fraudulent or dishonorable conduct, for which an attorney may be stricken from the roll. This is to restore to the judges that proper measure of power which is indispensable to the maintainance of judicial authority. It is to be hoped that the courts will always prove themselves worthy of the trust reposed in them, and that their power to punish for contempts will always be exercised with equal fearlessness and moderation, so that disorder may never encroach upon authority, and so that good men will feel of authority nothing but the benignant influence.

We are of opinion that the appeal does not lie, and the motion of the Attorney-General is therefore sustained.

Appeal dismissed.