Ex Parte Wm. Rust et als.
Ex Parte John Ireland et als.
Ex Parte Henry Maney.

1. When a person is charged with a contempt of court, which is not committed by act in the presence of the court or so near it as to interfere with the administration of justice, no final punishment should be assessed against him until after he has been cited to show cause why he should not be punished for contempt, and notified by the citation of the matter charged against him.

2. A party cited to show cause why he should not be punished by the District Court for filing an offensive brief or paper, may rest upon his exceptions to the sufficiency of the citation, if it fails to charge that he wrote, signed or filed the offensive brief or paper.

3. A judgment of the District Court imposing a fine for contempt, which purports to have been rendered on a day when the court held no session, is void.

4. And a judgment rendered on return of *scire facias* to the party charged, requiring him to show cause "why he should not be fined as he had before been" by said void judgment, is also void.

A day having been fixed in vacation by the Hon. Henry Maney to hear argument on a motion to dissolve injunctions issued to restrain the collection of the one per cent.

school tax, a paper was, on the second of May, 1873, handed by one of the parties signing the same to the clerk of the District Court, but with no instructions to file, of which the following is a copy, the legal argument being omitted :

"JOHN IRELAND
        v.        1987
JOHN F. GORDON.

A. W. DIBRELL                  In District Court of Guadalupe
        v.        1988         County.—Petition for Injunc-
JOHN F. GORDON.                tion.

P. W. HARDEMAN
        v.        1994
JOHN F. GORDON.

"In these several cases plaintiffs rely on a perpetuation of the injunction upon the following grounds :    *    *    *

"Your honor presided at a political meeting in Seguin, on Saturday last, at which the following resolution was passed, viz.:

"'Resolved, That we hereby utter our unqualified condemnation of those who, by injunction or otherwise, have sought to hinder the onward progress of the free school system, and through political hatred and partisan preju- dice have sought to starve the infant mind, and stamp on God-given intellects the curse of ignorance.   We call on the people of the State to rise in their might, and rebuke in thunder tones those who would enthrall the mind of the rising generation in darkness and ignorance, for the purpose of continuing their despotic rule ; for where learning and intelligence reign, independence and repub- licanism reign supreme.'

And while it is not our purpose to discuss the merits of said resolution, nor make commentary on the action of your honor, yet we deem it our duty to say that as your honor neither entered your protest nor vacated your posi-

tion, that resolution must have met with your approval. We therefore decline to argue the cases, believing that the dignity of the profession demands that course, in view of the fact that the judgment of the court seems to have been concluded upon a great question of constitutional and statutory law by a partisan meeting, and because at the forum, while we spoke to the judge, we could not fail to see the politician under the ermine.

(Signed)                              "Wm. M. Rust,
                                      "John Ireland,
                                      "W. E. Goodrich,
                                      "John P. White,
                                      "Alex. Henderson,
                                      "W. H. Burgess,
                                      "W. P. H. Douglass."

On the eighth day of May, 1872, the above named attorneys applied to the Hon. L. D. Evans, Chief Justice of the State, for a writ of *habeas corpus*, alleging that they were restrained of their liberty by John F. Gordon, sheriff of Guadalupe county.

Upon return of the writ, the relators were discharged from custody, on the ground that the warrant of arrest under which they were held disclosed upon its face that it was issued on the third of May, 1872, "in vacation," and required the imprisonment of the attorneys, in default of the payment of a fine of one hundred dollars each, for a contempt.

On the discharge of the parties a madate was issued by this court to the sheriff and District Court of Guadalupe county, which contained the order releasing the prisoners, and required it to be "in all things duly recognized, obeyed and executed."

On the third of June, 1872, *scire facias* was issued to William M. Rust, and each of the other attorneys, in

term time, by order of Judge Maney, requiring them to appear before the District Court of Guadalupe county on Monday, the tenth day of June, A. D. 1872, to show cause, if any they had, why they should not be fined, as they had been before, in the sum of one hundred dollars, for contempt of the District Court of Guadalupe county, "shown in and by a brief filed in causes Nos. 1987, 1988 and 1994."

On the seventh day of June, 1872, two of the attorneys (White and Ireland) applied to the Supreme Court for a citation against Judge Maney, requiring him to show cause why he should not be punished for contempt in refusing to obey the mandate of this court. They alleged in their application that after the issuing of the mandate from this court in the former proceeding, Judge Maney had directed the issuance of execution and the seizure of their property, which was then advertised for sale, to satisfy the fine for contempt imposed in May.

That application was endorsed, "Refused, June 8, 1872. EVANS, Presiding Justice."

June 11, 1872, Wm. M. Rust and the other attorneys applied to the Supreme Court again for a writ of *habeas corpus*, alleging that they were illegally restrained of their freedom by one Baumgarten, who alleged that he was acting under a verbal order from Judge Maney.

Another writ of *habeas corpus* was awarded.

The return to this writ was made by John F. Gordon, sheriff of Guadalupe county, who stated in his return that the applicants for the writ were committed to his custody by verbal order of the honorable District Court of Guadalupe county, while in session, for contempt; that he took said parties by virtue of said order, and also by virtue of orders entered on the minutes of said District Court on the tenth day of June, 1872.

The order of the District Court referred to in the return

recited with reference to each applicant for the writ, that he had been cited to show cause, if any he had, "why he should not be fined, as he had been before, in the sum of one hundred dollars for contempt of the District Court of Guadalupe county, shown in and by a brief filed in causes 1987, 1988 and 1994, on the second of May, 1872," etc.; "and it appearing to the court that said ————, Esq., is in contempt of this court; therefore it is ordered, adjudged and decreed by this court, that said ————, Esq., be committed to the custody of the sheriff of Guadalupe county, there to remain until he shall have paid the fine of one hundred dollars adjudged against him on the second day of May, 1872, and now adjudged against him," etc.

Upon the case thus presented, after hearing evidence, judgment was pronounced on the fourteenth day of June, 1872.

No briefs on file for either party.

WALKER, J.—It is a matter of personal regret] to the members of this court that our jurisdiction should have been twice invoked to relieve the relators from the restraint of their personal liberty.

Looking at the record filed in this case, we 'learn that on the third day of May, 1872, the relators were condemned to pay a fine of one hundred dollars each, in punishment of an alleged contempt of the District Court, presided over by the Hon. Henry Maney. And we are judicially informed that in default of payment of the fines so assessed against the relators, they were severally committed to the custody of the sheriff of Guadalupe county.

The relators made their complaint to this court, and prayed for a writ of *habeas corpus* on the ground of an illegal imprisonment. They were brought before us, and on examination had before this court they were discharged

on the ground that there was no District Court sitting in Guadalupe county on the third day of May, 1872, and that all proceedings purporting to be had before the District Court of said Guadalupe county, of that date, were null and void.

It now appears that on a day in term, to-wit, the tenth day of June, 1872, the following proceedings were had in the District Court of Guadalupe county, to-wit:

"EX PARTE JOHN IRELAND.

"John Ireland, Esq., having been required, on the third day of June, A. D. 1872, to appear before the District Court of Guadalupe county on Monday the tenth day of June, A. D. 1872, to show cause, if any he had, why he should not be fined, as he had been before, in the sum of one hundred dollars for contempt of the District Court of Guadalupe county, shown in and by a brief filed in cause No. 1987, and styled John Ireland v. John F. Gordon; and cause No. 1988, styled A. W. Dibrell *et al.* v. John F. Gordon, sheriff; and cause No. 1994, styled P. W. Hardeman *et al.* v. John F. Gordon, sheriff Guadalupe county, on the second day of May, 1872; and having on this, the tenth day of June, A. D. 1872, filed his answer, and it appearing to the court, after hearing his answer and testimony adduced in support thereof, that said John Ireland, Esq., is in contempt of this court; therefore it is ordered, adjudged and decreed by the court, that said John Ireland, Esq., be committed to the custody of the sheriff of Guadalupe county, there to remain until he shall have paid the fine of one hundred dollars adjudged against him on the second day of May, A. D. 1872, and now adjudged against him, and all costs in this behalf incurred."

Thus it will be seen that the proceedings of May 3 are made the foundation of the subsequent proceeding of

June 3, 1872. But this court, on the ninth day of May, 1872, declared the proceedings of May 3 void, and issued the following *mandate :*

"The State of Texas

*"To the District Court of Guadalupe County, and John F. Gordon, Sheriff of said County, greeting :*

"Before our Supreme Court, on the ninth day of May, 1872, the applicants, upon petition for *habeas corpus*, in the case *Ex parte* John Ireland, W. P. H. Douglass, John P. White, W. M. Rust, W. E. Goodrich, W. H. Burgess and Alex. Henderson, to revise or reverse your judgment in relation to said parties was determined, and therein our Supreme Court made its order in these words:

" 'No. 1085. This day came the sheriff of Guadalupe county, in obedience to the writ awarded in this cause, and brought with him the prisoners, John Ireland, W. P. H. Douglass, John P. White, W. M. Rust, W. E. Goodrich, W. H. Burgess and Alex. Henderson, and having made his return writ, George F. Moore and W. M. Walton, Esquires, appeared in behalf of the applicants, and B. Trigg, Esquire, District Attorney Twenty-seventh Judicial District, appeared in behalf of the State; and the petition of the appellants, the writ and return, with the evidence introduced, having been submitted to the court, because it appears to this court that said applicants are illegally restrained of their liberty ; it is ordered by the court, that they be discharged from the custody of the sheriff of Guadalupe county, and that they be restored to their liberty; and this decision be certified below for observance.'

"Wherefore we command you to observe the order of our said Supreme Court in this behalf, and in all things to have it duly recognized, obeyed and executed.

"Witness the Hon. Lemuel D. Evans, Presid-
[SEAL]     ing Judge of our said Supreme Court, with the
seal thereof annexed, at Austin, this ninth day
of May, A. D. 1872.

"W. P. DE NORMANDIE, Clerk."

The proceeding of June 10 then is a proceeding to compel the payment of a fine which this court had previously declared void, and is in violation of the mandate of this court.

Had the relators continued in contempt of the District Court, and been properly cited to purge themselves of the contempt, their answers under oath might have purged the contempt. (See The State v. Coulter *et al.*, Wright's S. C. Rep. of Ohio, p. 421.)

It may not be improper here for us to say that we do not regard it as our province to set at naught the judgments of the District Courts for any other cause than legal irregularities.

We believe it to be the true practice, when a person is charged with a contempt of court, that before any final punishment should be assessed against him, a citation should issue containing substantially the matter charged against him, and calling on him to show cause why he should not be punished for the alleged contempt. This rule, however, should not interfere with the right of the court to order the arrest or fine of persons for misbehavior, by act or word, in the presence of the court, or so near thereto as to obstruct or interfere with the administration of justice.

Had the offensive paper alluded to as a brief been upon the files of the court at the commencement of this proceeding, it might have been regarded as a gross contempt of the court, and have formed the basis of a proceeding *de novo* to punish the relators for such contempt; but such appears not to have been the fact, nor was this a

proceeding *de novo* to punish for a contempt actually committed against the court.    But it was a proceeding to enforce, by the penalty of imprisonment, the payment of a void judgment, and is therefore void.

The relators will be discharged from custody, but we deem it only proper to condemn them to pay the costs of this proceeding in this court.

RELATORS DISCHARGED.


On the twenty-sixth day of June, 1872, a writ of *habeas corpus* was again issued by L. D. Evans, C. J., on the application of Wm. M. Rust and the other attorneys, alleging that they were illegally restrained of their liberty by the sheriff of Guadalupe county.

The return of the sheriff to this writ is voluminous.    It shows the following facts :    On the eighteenth day of June, 1872, upon order of Judge Maney, the District Court of Guadalupe county being in session, *scire facias* was issued and served on the attorneys who had signed the brief or note of May 2, 1872, requiring them "to appear forthwith and show cause why they should not each be fined in the sum of one hundred dollars for a contempt of the said District Court of Guadalupe county, committed by reason of a certain brief or paper, offensive to said court in its language and terms, and now on the files of this court in causes," etc.— "being in words and figures following, to-wit :"        *        *        *        *·        *        *

The parties excepted in the District Court to the sufficiency of the writ of *scire facias*, because: 1. The writ did not allege or disclose the contempt with which the respondents were charged.

2. It nowhere alleged that respondents wrote, signed, or in any manner sanctioned the paper complained of, or that they had any connection with the execution or filing of the same.

3. Because it was indefinite, uncertain and insufficient, and failed wholly in complying with the legal requirements to set forth substantially the matter charged against them.

They plead, in bar to the proceedings, the fact that executions had issued and were then levied on property advertised for sale to pay a fine of one hundred dollars on each of them, formerly imposed for the same contempt alleged in the *scire facias;* also, the judgment of this court of the fourteenth of June, 1872.

In their answers they denied, under oath, that they had ever been guilty of a contempt of "the District Court of Guadalupe county," as charged; and also denied that the brief or paper referred to was ever intended to be used in the District Court of Guadalupe county in term time; that no brief or paper such as the one referred to in the *scire facias* was then on file, or was on file when the order for the *scire facias* was made, or had been on file since the beginning of the term; that if any such paper had been on file since the term began, then the same had been formally withdrawn from the files by an instrument of writing signed by respondents—except Ireland—in the following words:

"JOHN IRELAND ⎫
    v.   1987 ⎬ Suit pending in District Court of
JOHN F. GORDON. ⎭ Guadalupe county.

"Whereas, in the above entitled cause, and also in A. W. Dibrell *et als.* v. John F. Gordon, sheriff, No. 1988; and also in 1994, P. W. Hardeman *et al.* v. John F. Gordon, sheriff of Guadalupe county (all suits pending in the District Court of Guadalupe county, Texas), we, the undersigned, together with John Ireland and W. M. Rust, attorneys for the parties plaintiffs, did, on the second day of May, 1872, hand to the deputy district

23

clerk of Guadalupe county a paper, document, or brief, upon which he endorsed 'filed,' and placed the same among the papers in said causes; and whereas said paper, document, or brief, has fully accomplished and subserved the purposes for which it was intended, save that of satisfying the judge of the correctness of the legal position therein maintained; and whereas said paper, document, or brief, is a private paper belonging to us, the undersigned, and in no legitimate way a paper belonging to, or part of the records in said causes: now, therefore, we do hereby withdraw said paper, document, or brief, from the files and records of the causes above named.

"ALEX. HENDERSON, Attorney.
"JOHN P. WHITE, Attorney.
"W. P. H. DOUGLASS, Attorney.
"W. E. GOODRICH, Attorney.
"W. H. BURGESS, Attorney."

The return of the sheriff further stated, that after the respondents had answered in the District Court, touching the alleged contempt, they were each, on the twenty-fifth day of June, 1872, fined in the sum of one hundred dollars by said court (the Hon. Henry Maney presiding), and were committed to the custody of said sheriff until said fine was paid.

On the hearing in the Supreme Court the attorneys filed, under oath, a statement that the paper styled a brief, of date May 2, was not filed by them, but by the order of the Hon. Henry Maney, District Judge of Guadalupe county, seven days after the service was made on them of the rule issued, and in opposition to their objection to its being so filed.

They further stated, that the obnoxious paper complained of was not copied from the original paper styled a brief, signed by them, but from a newspaper, the editor of which copied it from another newspaper, and they did

not know whether it was a correct copy of a paper once signed by them or not.

*Hancock & West,* and *Terrell & Walker,* for relators.—
1.  By the statute of the State regulating proceedings under writs of *habeas corpus,* this court takes original jurisdiction of the case and passes on all pertinent matter that may be presented, irrespective of former adjudication by another tribunal. (See act of 1857 regulating *habeas corpus*; Paschal's Digest, p. 489, Art. 2631; Id., p. 489, Note 703; Id., p. 491, Art. 2648.) This last article contains the only limitation on the power of the court to discharge, and that is after indictment found.

2.  The respondents, by their sworn answers, purged themselves of any supposed contempt, and thereby divested the court of any power or jurisdiction to punish therefor. (2 Cooley's Blackstone, p. 287; Adams v. Haskel, 6 Cal. R., p. 316; case of Austin *et als.*, 5 Rawle R., 203; 2 Gall. R., p. 312; 63 North Carolina R., p. 408; 8 Ohio State R., p. ——; *Ex parte* Neel, 4 English R., p. 269; *Ex parte* Norton, 10 Mich., p. 208; *Ex parte* Curtin, 3 Minn., p. ——; *Ex parte* Jenkins, 2 Wal. Jr., p. 536 or 587; *Ex parte* Rowe, 7 Cal. R., p. 181; State v. Starte, 7 Iowa, p. 50 or 503.)

3.  Even libels on the judge of a court as a man and officer, though published in a newspaper, are not punishable as contempt. (Dunham v. The State, 6 Clark, Iowa, p. 245.)

4.  An order of court inflicting punishment for contempt should state the facts on which it is founded. (*Ex parte* Field, 1 Cal. R., p. 187; *Ex parte* Rowe, 7 Cal. R., p. 175.)

5.  By the statute (Paschal's Digest, p. 344, Art. 1409) contempt may be punished by a fine not exceeding one hundred dollars, and by imprisonment, in the discretion

of the judge, not exceeding three days. The respondents have now been in custody ten days. (Paschal's Digest, p. 567, Note 802; State Constitution, Bill of Rights, § 15; Coughlin v. Ehlert, 39 Mo. R., 285.)

Walker, J.—The case of Jordan v. The State was decided prior to the enactment of our statute regulating proceedings in *habeas corpus*. (Art. 2631, Paschal's Digest.)

Our Supreme Court was probably governed by the decisions in New York and Pennsylvania, in the decision of the case.

An issue is now made up, upon the return, in which the return may be controverted or avoided by new matter. By the common law, the return was conclusive until new matter was alleged in avoidance. By our statute the return is considered as controverted, whether new matter be alleged or not; and the rights of the applicant are thus enlarged.

It becomes the duty of the court to examine the case *de novo*.

A case of this kind is *quasi* criminal, and the strictness of pleading in criminal cases applies to it; whatever issues of law or fact are presented are to be tried by the court *de novo*. (Hurd, Hab. Corp., 299.)

There is no doubt but courts of justice have inherent power to punish contempts of their rules and orders, or any disturbance of their deliberations; yet nice questions have arisen as to the power of appellate courts, in revising the action of inferior tribunals in punishing for contempt.

Under our statute there can be no material difference in the power of the appellate court, whether the case comes before it on appeal, or by *habeas corpus*. The law was correctly laid down in our former opinion in this case,

and we now proceed to inquire whether the rule as laid down has been pursued.

The rule against the relators in this case is a rule to show cause why they should not be fined for a contempt of the District Court of Guadalupe county—for what? "By reason of a certain brief or paper, offensive to said court, in its language and terms, now on file in this court," etc., etc.    Then follows what purports to be a copy of the "offensive brief or paper;" but the citation nowhere charges that the relators, or any of them, wrote, signed, or filed the offensive brief or paper.

There is no cause of contempt then set out, and this citation is the writ to which the relators were bound to answer.    They excepted to its sufficiency and answered. They might have rested upon their exception, for they are charged with no contempt, and there was nothing for them to answer.

But let us examine this paper for a moment in the light of the history it has made for itself.    Certain causes were to be argued before the Hon. Henry Maney, at chambers, on the second day of May, 1872.    These causes presented questions concerning the validity of a public law, about which an intense excitement had grown up and existed throughout the State.    Before the argument the Hon. Henry Maney attended a political meeting and presided over its deliberations.    At this meeting the questions involved and pending in his court were discussed, and resolutions passed denouncing not only the opinions but the persons who entertained opinions antagonistic to the views and opinions of the meeting.

It seems the president of the meeting continued throughout to occupy the chair, and entered no dissent to the passage of the resolutions.

These resolutions were conclusive against the views and opinions which the relators, no doubt, intended to pre-

sent to his honor on the argument of their causes. Seeing, as it would appear, their causes prejudged at the hustings, we may suppose they wrote the paper which has become the gravamen of their offense; and this is a paper of not very distinctive character. It is somewhat difficult to tell whether it was intended as a brief, to be filed in the causes set for argument, or whether it was merely a letter addressed to the judge, giving reasons why the relators would not appear before him to argue their causes. There is no doubt they were incensed at the conduct of the judge. They thought he had soiled the ermine by dabbling in party politics at the very time and touching the very questions which they were going to argue before him, and which they had a right to argue to an unprejudiced mind, free from bias and preconceived opinion. They considered themselves offended, and, as they say, without a compromise of professional dignity, they could not appear before him to argue questions prejudged from the stump which should only be considered from the bench.

Doubtless the relators intended to snub the judge; they would give him a Roland for his Oliver. This does appear to be about the manner in which matters proceeded until the judge commenced proceedings against the relators for a contempt of his court.

Twice before we have discharged these relators from arrest and imprisonment growing out of this offensive paper.

And now the relators deny, under oath, that they ever intended the said paper to be used for any purpose in the District Court of Guadalupe county. They virtually confess some connection with the paper in their answers, but these answers being under oath, if not contradicted by the paper itself or other evidence, must be taken as true. It is a fact well known to this court that it is not the customary practice for attorneys to appear by brief in the District Courts, and if the paper referred to is to be re-

garded as a brief, there is nothing repugnant to truth in the supposition set forth in the answers that the paper was not intended to be used in the District Court. Truth and reason compel us to regard it rather in the light of a notice to the district judge, assigning reasons why the relators would not appear before him at his chambers on the second of May to argue their causes. We do not propose to shield the relators from the charge of professional impropriety, yet it does appear to us that the whole proceeding in the commencement is to be regarded rather as a quarrel between the judge and attorneys out of court, on the hustings, through the newspapers and other public channels, rather than as a proceeding properly connected with the business of the District Court of Guadalupe county.

Whilst we would uphold in every proper case the dignity of the courts, with even jealous care, we do not propose to give aid or sanction to any proceeding under the sacred name of justice which has purely for its object and end the carrying out of personal or political quarrels. The high dignity of courts must be respected on the one hand and the rights of the citizen on the other. The judicial office must neither be degraded by the bar nor prostituted by the bench. If persons have private quarrels they must not avail themselves of official standing or position to gratify or avenge them.

A very noticeable fact in the proceeding now before us is to be considered.

At the time the citations were issued against the relators " the offensive brief or paper " was not actually on the files of the District Court of Guadalupe county. It is a fact known to us that the paper complained of had been brought into this court and offered in evidence by the district attorney on a former hearing in this case, and now it appears that copies of the paper are placed upon the files

by order of the district judge as a basis for this proceeding, and about the same time the relators file a paper in the District Court of Guadalupe county formally withdrawing the "offensive brief," and claiming it as a private paper not belonging to the records. This they had a right to do, unless the judge considered the paper his private property, which he appears to have done, so far at least as to withdraw it from the files and place it in the possession of the district attorney of Travis county, where it is last heard from. If the judge had a right to regard the paper as his private property, the relators nevertheless had a right to withdraw and disclaim anything it might contain offensive to the feelings of the judge or the dignity of the court.

We wish this case disposed of now and forever. We cannot fail to discover the *quo animo* of parties, and that it is but an attempt to gratify personal ill-will, through the power and agency of the courts on the one hand, aggravated and urged on by newspaper comments and ill-timed resentment on the other.

So far as this court is concerned it cannot give sanction to any such proceeding. The relators are discharged.

Relators discharged.

Evans, C. J., *dissenting.*—The respondents are held in custody by the sheriff of Guadalupe county by virtue of an order of the District Court of that county made on the twenty-fifth day of June last.

The record discloses, that on the eighteenth of June, 1872, the District Court of Guadalupe county caused a notice to be served on the respondents to appear and show cause why they should not be fined for a contempt of the said court, "committed by reason of a certain brief, or paper, offensive to said court in its language and terms, and now on file in this court."

The brief, or paper, the filing of which was the basis of the notice to appear and show cause, was fully set out in the notice.

The respondents appeared and answered.

Their answers were not satisfactory to the court, and they were condemned by the court to pay a fine of one hundred dollars each, and were placed in the custody of the sheriff until the fines and costs were paid.

The writ of *habeas corpus* was awarded on the twenty-sixth of June, and the sheriff made his return on the first day of July.

To the return of the sheriff the respondents answered by a statement, under oath, " of matter of fact which they believed necessary to the proper exercise of this court's jurisdiction."

To this statement it is only necessary to say, that the respondents, having been adjudged guilty of a contempt by the District Court of Guadalupe county, cannot purge themselves of that contempt in this court. The only question in this court then is as to the correctness of that judgment.

We cannot look beyond that. The record of the proceedings in the District Court of Guadalupe county is brought before us as evidence in this case. That record sets out the contemptuous matter which the respondents were called upon to answer. If the record did not set forth the facts constituting the contempt of which the respondents were adjudged to be guilty, this court would be concluded by the judgment of the District Court. But as the facts are set forth in the record, it is competent for this court to consider them, and to determine whether they amount to a contempt or not.

The principles upon which courts of justice proceed in the punishment of contempts have been so frequently discussed that we deem it unnecessary to enter into an

exposition of them in the present case. The respondents are all members of the bar; and while it is due to the occasion that I should express my opinion with emphasis, I desire to discharge that duty in as few words as possible.

I am clear in my opinion that the respondents were rightly adjudged guilty of a contempt of the District Court of Guadalupe county. The record shows that the "brief, or paper," the filing of which on the second day of May, 1872, constituted the contempt, set forth in the rule to show cause, was handed by one of the respondents to the deputy clerk of the District Court. The paper was in the proper form of a brief in three causes then pending in the court. The deputy supposed that it was given him to be filed, and he filed it. The paper was insulting to the judge, and calculated to bring the court into disrespect with the people.

I feel constrained to say that the whole conduct of the respondents towards the court, since the original filing of the brief, displays a determined purpose to maintain an attitude of disrespect towards the court.

The paper filed on the seventeenth of June, purporting to withdraw the brief filed on the second of May, was scarcely, if at all, less offensive in its tone and language than the brief itself, and would fully justify the court in requiring respondents to withdraw this offensive language in fit and apt words, by the process of contempt. In the answers of the respondents to the rule to show cause there is studied evasion and a design to wound. And yet this court comes to the relief of the respondents, and excuses their conduct upon grounds not disclosed by the record. If the facts relied on in the opinion of the court in excuse of the attorneys be true, surely they should have been set out in their answers at the proper time. But they are not.

We would, in my opinion, be wanting in duty if we

failed to characterize the conduct of the respondents as a violation of their professional duty to the court.

It is equally a violation of a duty which they owe to themselves and to the profession of which they are members—honorable members all—and some of them able, experienced and distinguished members.

The country has not recovered from the shock of a great war.. There are impediments to the administration of justice to be found in the prejudices which grow out of and are fostered by the contests of political parties. There are, doubtless, cases of indiscretion, resulting from inexperience or other causes, on the part of those who have been called to the discharge of judicial duties. This is to be lamented. But the duty of the members of the bar is a plain one. Their learning and professional training should supplement, if need be, the inexperience of the bench.

They should never allow themselves to be betrayed by passion or resentment into the formation of combinations to destroy or impair the authority of the bench.

I cannot concur in the judgment of the court.

On the fourteenth of November, 1872, the former relators again applied to this court for a rule on Henry Maney, to show cause why he should not be punished for refusing to obey the former mandates. They alleged, under oath, that on the eleventh of November, 1872, the Hon. Henry Maney, presiding at a session of the District Court of Guadalupe county, refused to permit said attorneys to appear for their clients, until the former alleged contempt committed was purged; that he refused to permit the mandates and opinion of this court, touching such alleged contempt, to be read, remarking that he had a copy of them, etc.

In response to the *scire facias* issued by this court,

Henry Maney, on the twenty-ninth of November, 1872, answered, under oath, that no act done by him was performed with any intention of showing contempt to this court. The rest of his sworn answer is by way of argument, and is too voluminous for insertion in full.

## RESPONDENT'S ANSWER.

\* \* Respondent most respectfully submits, that the jurisdiction of this or any other court means its power to hear and determine a cause. The decree or mandate of the Supreme Court, when rendered in the exercise of its appellate jurisdiction, becomes, to the District Court from which the appeal was taken, the law of that particular case ; and the court has power in such case to enforce the execution of its mandate. (Banton v. Wilson, 4 Texas, 404; and Art. 5, § 3, State Constitution, p. 23.)

Section 3 of Article 5 of our State Constitution confers and defines the jurisdiction of this honorable court. From this section, and repeated decisions of this court, it seems clear that this court has no power to do anything else than to exercise its appellate jurisdiction in such civil cases as are properly brought here from some of the inferior courts, and in such criminal cases as some judge of this court shall permit to be brought here, because, upon inspection of the transcript of the record, he believes some error of law has been committed by the judge before whom such case was tried, and to enforce both its appellate and original jurisdiction by such writs as are proper and necessary, and to grant the writs of *habeas corpus* and *mandamus*. (*Ex parte* Colin De Bland, Dallam's Digest, p. 406 ; McFarland v. Johnson, 27 Texas, 108.)

In granting the writs of *habeas corpus* and *mandamus* and hearing the application or petition, this court exercises its original jurisdiction, which is co-extensive and

concurrent with and in no respect different from that exercised by the District Courts of this State, or any one of the judges thereof.

&ast; &ast; &ast; It seems clear that it was not necessary or required by the provisions of our criminal procedure, touching *habeas corpus*, for this court to have certified its judgment or mandate in said cause No. 1127, to the District Court for observance, for the plain reason that this honorable court and the District Court of the Twenty-second District, as to the subject matter adjudged, had by the Constitution original jurisdiction, co-extensive and concurrent. &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Our criminal procedure is specific in its provisions as to the exercise of the appellate jurisdiction of this honorable court in *habeas corpus* cases.

&ast; &ast; &ast; What purpose could be accomplished by certifying the judgment to the court *a quo* for observance, when the statute provides for its being executed by notice to the officer having the party in custody, or the sheriff of the proper county? And if it be true, as stated in Articles 2585, 2586, 2587 and 2588, and by this honorable court in McFarland v. Johnson, 27 Texas, 105, that the end and object of the writ of *habeas corpus* is prompt relief from personal restraint, surely, when the relief sought has been obtained, the writ has performed its office. Judgment of the Supreme Court in *habeas corpus* is, by Article 3225, final and conclusive, and acts upon nothing else except the illegal restraint complained of. And there is, therefore, nothing left to be done or to be observed by the court *a quo*. The Supreme Court itself is vested by the Constitution with power to enforce its own jurisdiction. Respondent knows of no case wherein a court or judge of this State, hearing an application under *habeas corpus*, whether exercising original or appellate jurisdiction, has ever assumed to do more

than to discharge, remand or admit to bail. (Republic v. W. D. Bynum, Dal. Dig., 376; and Holman v. Mayor of Austin, 34 Texas, 668.)

\*   \*   \*   Courts are the exclusive judges of contempts shown them (Holman v. Mayor of Austin, 34 Texas, 608); and for this reason, among others, no appeal is permitted from a judgment of conviction for a contempt. (Floyd v. State, 7 Texas, 215; Crow v. The State, 24 Texas, 12; Casey v. The State, 25 Texas, 380.)

Respondent further says, that there are outstanding five judgments against each of said applicants in said cause No. 1127; that up to this time respondent believes that these attorneys, against whom the five fines, of one hundred dollars each, have been adjudged for contempt of the District Court of Guadalupe county, have failed, as they are each required to do, to pay anything towards the satisfaction of said judgments of conviction; and therefore this respondent says, that at the November Term, A. D. 1872, of the District Court of Guadalupe county, your respondent called the attention of said attorneys to the fact that they were, by these several judgments, convicted of a contempt of court, and that so long as said judgments remained unpaid, or until they filed in the District Court of Guadalupe county a true copy, or substantial copy, of their response to the return of the sheriff filed in cause No. 1127, *Ex parte* John Ireland *et al.*, that the District Court of Guadalupe county could not permit them to practice as attorneys in it.

If it be true that a court is to judge exclusively for itself of a contempt committed against it, then the said attorneys were convicted of contempt and fined before the rendition of the mandate or judgment in cause No. 1127, *Ex parte* John Ireland *et al.;* and said contempt has never been purged, nor have said attorneys paid into court the fines, nor in any other way satisfied said judg-

ments of conviction for contempt. And therefore respondent says that the Judge of the Twenty-second Judicial District was, by reason of the respect demanded by the law, from attorneys as well as others, to be shown the District Court of Guadalupe county, constrained to "turn a deaf ear" to all applications coming from said attorneys to said court, except such as involved matters of right. (Johnson v. Pinney, 1 Paige, 646 ; Lane v. Ellzey, 4 Hennig & Mumford's Reports, 504.)

Respondent further says, that this honorable court only has superintendence and control over inferior courts, by the issuance of proper writs, to enforce its appellate and original jurisdiction. (McFarland v. Johnson, 27 Texas, 108.)

On the day after the filing of respondent's answer, the following opinion was delivered :

OGDEN, J.—On the twenty-second of July, 1872, the relators were brought before this court on a writ of *habeas corpus*, and, on an investigation of the case, it was found that they had been committed by the Hon. Henry Maney, District Judge of the Twenty-second Judicial District, for an alleged contempt of the District Court of Guadalupe county. This court, in the opinion delivered in that case, declared that "the relators were charged with no contempt;" and as they were charged with no contempt, no legal judgment could be entered up against them, and they were, therefore, discharged.

The mandate which issued upon the judgment in that case enjoined all further proceedings against the parties for the supposed contempt.

It now appears, from the petition of the relators, and the answer and confession of the respondent, that he, as the Judge of the Twenty-second Judicial District, has dis-

regarded the judgment and mandate of this court, and, in violation of said mandate has attempted to enforce, in a manner wholly unknown to our law, that pretended judgment of his court, which, in effect, had been declared by this court null and void. We are therefore constrained to hold the said Henry Maney, judge as aforesaid, in contempt of the judgment and mandate of this court.

It is therefore ordered and adjudged by this court, that the Hon. Henry Maney, Judge of the Twenty-second Judicial District, be and he is hereby fined in the sum of one hundred (100) dollars, for a contempt of the judgment and mandate of this court.

And it is further ordered, that the said Henry Maney, judge as aforesaid, do abstain from any further hindrance of the relators, or interference with their right to practice law in any of the courts of Texas to which they have been legally admitted, by reason of any supposed or pretended contempt of the District Court of Guadalupe county, for which they had been arrested, and were discharged from arrest by the judgment of this court, on the twenty-second day of July, 1872.

It is further ordered and adjudged, that the said Henry Maney pay all cost of this proceeding.

ORDERED ACCORDINGLY.

On the seventeenth of March, 1873, in another proceeding at the suit of the former relators, the following judgment was rendered by this court :

"An information having been filed in this court on the seventh day of March, 1873, complaining of the Hon. Henry Maney, Judge of the Twenty-second Judicial District, that he is in contempt of the mandate of this court, issued on the thirtieth day of November, 1872, and that, in disobedience of said mandate, he continues to restrain

the relators from practicing as lawyers in the court over which he presides, and that they are thus deprived of their legal rights as licensed attorneys of the courts of this State, and that he did so far disregard the rights of the relators, and their clients to be represented by them in the said courts presided over by the said Henry Maney, at the last term of the District Court of Guadalupe county, and since the thirtieth day of November, 1872, as to refuse to hear them as attorneys, or to allow them to represent their clients in causes then and there pending in said District Court ; and the said information being proved to our satisfaction by the oaths of Wm. E. Goodrich and W. H. Burgess; it is therefore ordered, adjudged and decreed, that the said Henry Maney is guilty of a contempt of the mandate of this court, and that he pay a fine of five hundred dollars ($500), and be imprisoned in the county jail of Travis county for the term of fifteen days; and that in default of the payment of said fine, as well as a fine of one hundred dollars heretofore assessed against him on a similar complaint of contempt, of which he was found guilty by this court on the thirtieth day of November, 1872, on the expiration of his term of imprisonment, the sheriff of Travis county will return the body of the said Henry Maney before this court."

The circumstances under which the respondent was finally released, when brought before this court, are not disclosed by the record.

At the following term of the Guadalupe District Court the unfortunate contest was renewed by the refusal of Hon. Henry Maney to permit the relators to practice as attorneys until they had purged the alleged contempt. On the application, under oath, of Wm. M. Rust and John Ireland, process was again issued from this court, July 2, 1873, requiring Henry Maney to appear before it on the tenth day of July following, to show cause why

24

he should not be held in contempt of [the orders of the court. It was served on the fifth of July.

On the seventh of July, Henry Maney, Judge of the Twenty-second Judicial District, relieved the contest from its increasing monotony by resorting to a novel expedient. He caused process to issue, under seal of the District Court of Guadalupe county, requiring the sheriff of Travis county to summon Wesley Ogden and M. B. Walker, judges of the Supreme Court, to appear before the District Court of Guadalupe county, at the court house in the town of Seguin, "on Saturday, the twelfth day of July, A. D. 1873, at 10 o'clock A. M., then and there to show cause, if any they can, why they should not be held in contempt of the District Court of Guadalupe county, for the issuance of the mandate (before set forth), and for unlawfully fining and imprisoning Henry Maney, Judge of the Twenty-second Judicial District."

On the tenth of July, Hon. Henry Maney failing to appear in obedience to process from the Supreme Court, an attachment was issued for his arrest, which was executed by Geo. B. Zimpelman, sheriff of Travis county.

On the twenty-eighth of July, a writ of *habeas corpus* was issued by Hon. L. D. Evans, as Chief Justice of this State,* directed to Geo. B. Zimpelman, for the body of Henry Maney, upon which the following return was made:

"Received same day issued. Not executed, being officially informed that Wesley Ogden is Presiding Judge of the Supreme Court of the State of Texas.

"GEO. B. ZIMPELMAN, Sheriff T. C."

It appearing to Hon. L. D. Evans, at chambers, that one "Wat. Campbell, a citizen of Austin," was a "suitable person to execute the writ of *habeas corpus*," issued

---

*At that time it was claimed by a majority of the Supreme Court that Judge Evans' term of office had expired.

by him, he was appointed, and on the ninth of August made return that he was unable to execute the same.

On this return being made, it appears from the papers on file that an order issued from the Hon. L. D. Evans, "at chambers," on August 11, 1873, requiring Zimpelman to appear before him to answer for contempt in failing to obey the writ of "*habeas corpus.*"

On the same day the Hon. Henry Maney, through his counsel, being in close custody under attachment, applied to this court for time to answer the rule for contempt, alleging that he needed certified copies of fourteen judgments rendered in Guadalupe county, and for that cause desired the Supreme Court to postpone the hearing until the first Monday of September, 1873.

On the next day, Zimpelman failing to appear before the Hon. L. D. Evans "at chambers," the late Chief Justice signed and filed among the papers in the cause the following order:

"There being no return made to the rule on George B. Zimpelman, sheriff, and having no proper officer at my command to receive and execute a process against said Zimpelman, sheriff, this matter is adjourned *sine die.*

"L. D. EVANS, Ch. J. S. C."

On the thirteenth of August, 1873, Henry Maney applied to Justice Walker for a writ of *habeas corpus,* which was issued and returned forthwith by the production of the body of the relator before the court.

Proceedings were postponed until September 3, when the following opinion was pronounced:

PER CURIAM.—The court having had this case under consideration, and after due examination of the answer of the respondent, having heard the evidence adduced for and against the respondent, we are of opinion that the answer is wholly insufficient in law to purge the contempt

of which the respondent stands charged, if true ; and we regret, after a full examination of the evidence, that we are forced to the opinion that the answer is evasive and seeks to avoid an answer to the charge against the respondent.

The statements contained in the answer are mainly contradicted by the evidence.

We have sought in vain for mitigating facts or circumstances upon which to reduce the punishment to be awarded in like cases, but have found none ; and we are fully satisfied that the conduct of the respondent throughout has been in contumacy of the dignity of this court and in bold defiance of its authority. It is therefore ordered and adjudged, that the said Henry Maney be held in contempt of this court for willful disobedience of its process, issued on the second day of July, 1873, in the case of the State of Texas at the relation of John Ireland *et al.* against the said Henry Maney, Judge of the Twenty-second Judicial District, and that he, the said Henry Maney, be and hereby is sentenced to the county prison of Travis county, there to be kept and confined for the term of ten days ; and he is hereby adjudged to pay a fine to the State of Texas of five dollars, and all the costs of this proceeding, for which, if not paid in ten days, execution may issue.

[The following note from Judge Maney was filed in the Supreme Court in the last cause decided, on the eighth of September, 1873.—REPORTERS.]

" *To the Honorable the Supreme Court of the State of Texas :*

"In the unfortunate controversy out of which has grown my present imprisonment, I have acted throughout from a sense of duty, and in the belief that my course was sanctioned by the law. I still so believe.

"But the Supreme Court—the highest tribunal in the State, and from which there is no appeal—having decided against me, I feel that a further contest on my part would be fruitless. Having done all that I conceive my duty requires in the premises, and being overruled by the Supreme Court, I yield to its superior power and authority.          *          *          *

"HENRY MANEY."