<hr/>

## C. H. McCORMICK & BRO. v. M. G. BUSH.

1. It is error to strike out an answer which, though it may be untrue in fact, presents a complete bar to the plaintiff's action.
2. Where suit was for services as agent under contract, for the years 1860 and 1861, which fixed the compensation at the same amount as in a contract

between the same parties for the year 1859, it was error to refuse to permit the contract of 1859 to go to the jury.

3. In a suit by a sub-agent it is error to exclude from the jury the contract between the principal and the agent.

4. An agent or trustee cannot delegate the authority conferred upon him without an express power to that effect; and where any rights are claimed under the exercise of that authority, the power to make such delegation must be expressly alleged and proven.

5. When money is advanced to an agent in the regular discharge of his agency, and for the especial benefit of the principal, the principal may ordinarily be held responsible ; but unless it be made clearly to appear that the loan or advance was made for the especial benefit of the principal, then the agent alone is responsible, in the absence of special authority from the principal.

APPEAL from Grayson.     Tried below before the Hon. C. C. Binkley.

On the twenty-first of June, 1868, M. G. Bush brought his suit against C. H. McCormick & Bro., alleging that the defendants, on the first of January, 1860, through their general agent, John McKay, contracted with plaintiff to make him their agent for the counties of Grayson and Collin, Texas, for the sale of the defendants', McCormick & Bro.'s, reapers and reapers and mowers, setting forth specially the terms of the contract, and appending a list of persons to whom he had sold machines in 1860 and 1861, asserting that he had been the agent of the defendants in 1859, and was continued for 1860 and 1861 on the same terms.     He alleged, further, that in 1861 he was compelled to deliver the notes taken under his agency to the Confederate States Receiver, one F. J. Patillo, under the confiscation acts of the Confederate States, and that since peace had been restored, the defendants had taken possession of the notes and employed another agent, by which acts, under the contract, his right had accrued against McCormick & Bro. for compensation, which had not been made.     He further alleged that the defendants were indebted to him for a sum of

money advanced by plaintiff to John McKay, the general agent of plaintiff, for the use of plaintiff.

The defendants filed a general denial, pleaded in reconvention that the plaintiff had appropriated eighteen machines to his own use, and finally pleaded that the plaintiff had fraudulently combined with one Frank J. Patillo, who was the Confederate States Receiver, and voluntarily abandoned the service of defendants, for the purpose of cheating and defrauding the defendants out of all sums of money due them on the sales of reapers and reapers and mowers, in 1860 and 1861; that he accepted a subagency under said Patillo, and took possession of said notes from him, and collected the whole of them in Confederate money; and after retaining ten per cent. out of the collections, paid the remainder to the said Patillo as Receiver of the Confederate States, at war with the United States; by reason of all which, the plaintiff was not entitled to compensation from the defendants for his trouble in selling the said property.

The answer setting up these facts was, on motion, stricken out by the court, as constituting no defense to the action.

The trial came on to be heard in June, 1871. During the progress of the trial the defendants offered in evidence a contract for 1861, with John McKay, by them as their general agent for Texas, for the management of their business, and authorizing him to appoint sub-agents, whom he was to pay, and for whose conduct he was to be responsible, which, being objected to, the court excluded.

They also offered to show the truth of their plea of voluntary abandonment and fraudulent combination, by a witness, which evidence was also excluded.

By the plaintiff was offered in evidence a contract made by John McKay, as general agent of defendant, C. H. McCormick, purporting to make the plaintiff an agent for

the sale of machines in the counties of Grayson and Collin, for the year 1859, which was objected to, and objection sustained, and to which plaintiff excepted.

Verdict and judgment for plaintiff for $1050, and defendants appealed.

Ogden, J.—There is error in the ruling of the District Court in this case in sustaining a motion to strike out certain portions of defendant's answer.    The answer charges, substantially, that the plaintiff, if he ever was the agent of defendants, "voluntarily abandoned their service and combined and confederated with one Patillo for the purpose of cheating and defrauding them, in which confederation he turned over to said Patillo a large amount of notes and other property belonging to defendants, whereby they were greatly damaged, and that he thereupon voluntarily engaged himself in the service of said Patillo as a sub-agent," etc.    If this plea is true, it forms a complete bar to any claim for compensation for services.    (Paley's Agency, 104 ; Principal and Agent, 356 ; and Comyn on Contract, 1 Vol., 371.)    The truth of such plea must depend upon the testimony, and if the plea were in fact untrue, still it would be error in the court to strike such a defense from the pleadings.    The order of the court striking out this plea is not in the transcript, yet the plaintiff below claimed that it was stricken out, and the ruling of the court on the objection raised to the evidence of Ferguson, which was offered to prove the truth of that plea, clearly shows that the court considered it had been stricken out.    We think the plea a good one, and the court erred in rejecting evidence of the truth of the same.

Upon the trial the plaintiff claimed compensation for services as agent of defendants for the years 1860 and 1861, and that the contract of agency for those years was

the same as that made for the year 1859. When he had
proven that there was a contract for 1860 and 1861, he
had the right to prove what that contract was by a refer-
ence to the contract of 1859. We, therefore, are of the
opinion that the court erred in sustaining the objection
raised to the introduction, in evidence, of that contract of
1859 between McKay as general agent and the plaintiff.
And here is made manifest a fatal error in the judgment
of the lower court, in this, there was no evidence of the
terms of the contract for 1860 and 1861 excepting by refer-
ence to the contract of 1859, and as that was ruled out,
there was no evidence of the terms of the contract, and
no evidence of the value of the services, and therefore
no legal foundation for any judgment for services what-
ever.

There is another fatal error in the rulings of the court
which will require a reversal of the judgment. The plain-
tiff claims compensation for services rendered in pursu-
ance of a contract made between the plaintiff and one
McKay, who, it is claimed, was the general agent of de-
fendants, therefore authorized to bind his principals in
contracts with sub-agents; but when McKay's contract of
agency with defendants, which contained a very specific
enumeration of his powers and authority as such, was of-
fered in evidence, on objections raised it was ruled out.
This certainly was such an error as will require correction.
The plaintiff claimed by reason of his contract of sub-
agency with McKay, the general agent of defendants, and
yet the court ruled out proof of the authority of that
"general agent."

The general rule of agency and trusts is, that an agent
or trustee cannot delegate the authority conferred upon
him without an express power to that effect; and where
any rights are claimed under the exercise of that author-
ity, the power of delegation must be expressly alleged

and proven.  In Dunlap's Paley's Agency, p. 177, it is
said :  "A factor cannot delegate his employment to an-
other so as to raise a privity between that other and his
principal, or consequently to confer upon the person de-
puted, as against the principal, any right, whether of
commission, repayment or lien."  And again, on page
309, the same author says :  " The party who avails him-
self of the acts of an agent must, in order to charge the
principal, prove the authority under which the act was
done.  If the authority be created by a power of attor-
ney, it must be proven by the production of the instru-
ment itself, that it may appear whether the authority has
been pursued."  Chancellor Kent says (Kent's Com., 2
Vol., 633) :  " An agent, ordinarily, and without express
authority, or a fair presumption of one growing out of a
particular transaction or usage of trade, has no power to
employ a sub-agent to do the business.  The maxim is,
that *delegatus non potest delegari*, and the agency is
generally a personal trust and confidence which cannot
be delegated."

We think, therefore, that the plaintiff below, as he
claims under a contract with McKay, as the agent of de-
fendants, should have alleged and proven that McKay, in
1860 and 1861, had express authority to contract with him
as sub-agent, so as to bind his principal ; and under de-
fendant's general denial of plaintiff's agency, we think
they should have been permitted to prove the character
of McKay's authority as their general agent, and this
could not be done with more certainty than by the pro-
duction of his executed power or contract as such agent.
The court therefore erred in sustaining the objection to
the introduction of McKay's contract with the defend-
ants.  But the contract between McKay and appellants,
existing in 1861, as exhibited in a bill of exceptions taken
on the trial, shows affirmatively that at that time he, Mc-

Kay, had no authority whatever to bind his principal in any contract with sub-agents.

There is also an error in the charge of the court in regard to the three hundred and fifty dollars paid by appellee to McKay, which, if as an abstract proposition of law it were unobjectionable, yet which, when applied to the facts of the case, was irrelevant and may have misled the jury. The only testimony in regard to that transaction was given by the son of appellee, who testified in substance that in the fall of 1860 McKay was going to Chicago, and that the plaintiff advanced to him, for the defendants, a sum of money, which, after referring to the book, he said was three hundred and fifty dollars. In his statement there is no intimation that the money was advanced at the special instance and request of defendants, or that they knew anything about it, and indeed his whole statement would naturally lead to the conclusion that the defendants were ignorant of the transaction. Under these facts the court charged the jury that "if they believed from the evidence plaintiff advanced any money for defendants, at their request or of their authorized agent, they will find the amount so advanced, with interest," etc. There can be set up no pretense, from the evidence, that defendants had requested any such advancement; and the latter clause of the charge cited is not correct law, unless the court meant by "their authorized agent" an agent specially authorized to borrow money, since it is a general principle of the law of agency that it requires special authority to authorize an agent to borrow money on the responsibility of his principal.

In Theobald & Hammond's work on Principal and Agent, p. 337, it is said: "If an agent undertake, for his principal, to pay a sum of money, without any authority, he alone is liable on the promise, and so if without any authority he borrow money." The same doctrine

is announced in Dunlap's Paley's Agency, 386.  The true doctrine is believed to be this : when money is advanced to an agent in the regular discharge of his agency, and for the special benefit of the principal, the principal may ordinarily be held responsible; but unless it be made clearly to appear that the loan or advance was made for the especial benefit of the principal, then the agent alone is responsible, in the absence of special authority from the principal.

From the evidence in this case, it is fair to suppose that the advance made to McKay was primarily for the benefit of the agent and not his principal, and until it is proven that he had special authority to borrow on their account he alone can be held liable for the advance made.   There was no error in the ruling of the court in excluding the books offered by the plaintiff below.   They were not sufficiently proven up to entitle them to be introduced in evidence, and indeed, from the very imperfect description of them by the witness, it is quite doubtful whether they could be proven up so as to be admissible.

For the errors herein indicated, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.