## No. 8109.

STATE OF LOUISIANA EX REL. LUCIEN DEBUYS VS. JUDGES OF CIVIL DISTRICT COURT, PARISH OF ORLEANS.

This Court has the power, under Article 90 of the Constitution, in its sound discretion, to issue a writ of *Certiorari* to revise the proceedings of a District Court, in cases where no Appeal lies and where serious injury might accrue for want of other legal remedies.

Each judge of the Civil District Court of the Parish of Orleans exercises, in the cases allotted to him, all the powers of the court.

Recognition of the great constitutional law that "no person shall be deprived of life, liberty, or property, without *due process of law.*"

Contempt of Court is of two kinds: that which is committed in open court, and that which is committed out of the view and hearing of the court.

For the punishment of the first by commitment and fine, no proceeding needs be taken contradictorily with the offender.

But for the punishment of the latter by the same means, the offender must be granted a Rule to show cause and be allowed to offer evidence and argument in his defense.

J. O. Nixon, Jr., and E. W. Huntington, for the Relator.

The opinion of the Court was delivered by

BERMUDEZ, C. J.    This is an application for a *certiorari,* to ascertain the validity of certain proceedings by which the relator was sentenced, for a contempt of court, to an imprisonment of ten days and to a fine of fifty dollars.

In substance, the relator charges that, on Saturday, the 18th December, 1880, he was arrested in his office by the Civil Sheriff of this parish, under a pretended order of court, and conveyed to the court-room of the Civil District Court in this city, where he was, without hearing, condemned by the said Court to pay a fine of fifty dollars and to be confined in the Parish Prison for ten days for an alleged contempt of Court; that he applied to said Court for permission to introduce witnesses, for time to prepare a defense, which were denied him; that his counsel offered to read opinions and decisions of other courts, which was refused; that he had no notice whatever of the offense with which he was charged until he was brought to court; that he was brought before the Court and condemned without being heard, and was thereupon committed to the Parish Prison, in New Orleans, where he is now confined.

The petition further avers, that said pretended judgment is an absolute nullity, because petitioner was condemned for an act alleged to have been committed, not at a place or time when the Court was in session, without any previous notice, and without being heard, and because the judges of the said Court refused to hear petitioner, or his witnesses, before pronouncing said sentence; that the contempt charged was the commission of an act which is indictable and punishable under the criminal laws of this State, and that the judgment punishing petitioner therefor is a mere nullity.

The relator prays that after due course of law, said proceedings be declared null and void.

The petition is sworn to by the relator.   In answer to the rule issued to show cause why the relief sought should not be granted Henry L. Lazarus, one of the judges of the Civil District Court for the parish of Orleans, says, that he tenders the record in the case of Berje vs. New Orleans, and all proceeding therein; that under the Constitution and an allotment of said case to him, he has *exclusive* control over the same; that the other judges have no control over the record of said case, and have no return to make, other than the return of the respon-

**1258**        SUPREME COURT OF LOUISIANA,

State ex rel. DeBuys vs. Judges Civil District Court.

dent; that the proceedings, judgment and commitment of relator by him were based upon the facts set forth in the record, which constitute a most flagrant and unwarrantable contempt of court. Respondent prays that this return be accepted as satisfactory, and that the proceedings be dismissed.

The return does not contradict any of the averments of facts contained in the petition, which must, therefore, be taken for true, the more so as the record supports them.

It does not expressly affirm the validity of the proceedings ultimating with the sentence for contempt, but rather upholds the advisability and correctness of the decree made in the premises. This will not, however, prevent us from passing upon the issues as disclosed by the petition itself.

Two questions are presented for our determination in this case:

1st. Whether the proceedings by which the relator was sentenced to imprisonment and confined, and to pay fifty dollars as a fine, for contempt of court, are regular and *valid*.

2d. Whether, if they be so, the District Judge had the *power* to punish for a contempt, and whether a contempt was committed.

The right of this Court to issue and entertain the process of *certiorari* and to pass upon the issues made in a case in which no appeal lies, cannot be doubted under the provisions of article 90 of the present Constitution, which vests it with control and general supervision over *all* inferior courts and with power to issue writs of *certiorari, prohibition, mandamus, quo warranto* and other remedial writs.

In 32 A. 549, 553, we held that this article emancipated this Court from the restraint placed by the previous Constitutions, by the Code of Practice, and by the jurisprudence upon the exercise of such powers, which were, up to the adoption of the Constitution in force, limited to cases in aid of its appellate jurisdiction. Article 74, Const. 1868; C. P. 860; 31 A. 795; 15 A. 120; 22 A. 459, 517; 16 A. 164; 30 A. 457; 25 A. 381. We there clearly announced that, as a rule, we would exercise the powers thus to us delegated over inferior courts—in our sound discretion—in those cases in which there would exist a flagrant usurpation of authority, or where serious injury might accrue to parties to whom *no other* remedies are afforded, or where the intermediate courts are powerless to grant relief.

We think the case before us is one in which we are authorized to institute the inquiry and to make a determination of the matters submitted.

The Civil District Court for the parish of Orleans is a constitutional judicial organization, clothed with GENERAL civil jurisdiction. It is composed of five judges, each of whom represents the court and exercises,

NEW ORLEANS, DECEMBER, 1880.          1259

State ex rel. DeBuys vs. Judges Civil District Court.

in the cases allotted to him, *all* the powers of the court. Each judge possesses the powers necessary for the administration of justice, though the same be not expressly given by law, among which is that to punish *all* contempts of his authority by fine not exceeding fifty dollars, and imprisonment for a period not exceeding ten days, for each offense. Const. article 130; C. P. 130, 131.

It does not appear from the record, otherwise than from the petition, whether the judges representing the court sat together during the proceedings complained of, and whether the sentence pronounced was or not their act. Be that as it may, the District Judge, who has answered, has done so in his and their name.

We do not see how the process of this Court was sought and leveled at *all* the judges of the Civil District Court, who have, as a rule, no authority collectively, but only separately, to represent that court. They may in given instances act together; but we are at a loss to know what their power could have been to sit *en banc*, as it is represented they have done in this case, on a proceeding to punish for a contempt not alleged to have been offered to all but to one only.

It is clear that each judge representing the court had power to punish for contempt. The respondent, Henry L. Lazarus, as one of the judges of that court, possessed that power to the full extent provided by law, as a necessary incident of the creation, existence and operation of a tribunal organized as a court of justice. Bac. Abr. Courts and their Jurisdiction, E; Rolls's Ab. 219; Bouvier L. D. p. 302, No. 5. Having that power, he had authority to exercise it, but he could do so only in the manner and form and in the cases provided by law, and in which such power is authorized to be exercised.

C. P. 131.

It is written in the paramount law of the land that "NO PERSON SHALL BE DEPRIVED OF LIFE, LIBERTY, OR PROPERTY, WITHOUT DUE PROCESS OF LAW," U. S. Const. Amend. 5; and this solemn prohibition, in order that it may be better known and respected, is reiterated in the organic law of this State. Const. 1879, Art. 6.

That great constitutional provision which guarantees to every citizen life, liberty, and property, derives from "Magna Charta," which declares :

*Nullus liber homo capiatur vel imprisonetur, aut disaisietur, aut relegatur, aut exulatur, aut alieno modo destructur, nec super eum ibimus, nec super eum mittemus, nisi per legale judicium, parium suorum, vel* PER LEGEM TERRÆ.

No better definition of what the law of the land is can be found, than that found in Mr. Webster's argument in the celebrated Dartmouth College case.

1260        SUPREME COURT OF LOUISIANA,

State ex rel. DeBuys vs. Judges Civil District Court.

"By the law of the land is most clearly intended, the general law which hears, before it condemns, which proceeds from inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold life, liberty, property and immunities under the protection of general rules which govern society. Everything which may pass under the form of an enactment is not the law of the land."

See Sedgwick on Construction of St. and Const. Law, p. 476, *et seq.* and notes ; Cooley on Const. Lim. 351, and authorities in notes. 4 Blackstone, 424.

"It cannot mean less than a prosecution or a suit instituted and conducted according to the prescribed forms and solemnities for asserting guilt, or determining the title to property. The same measure of protection against legislative encroachment is extended to life, liberty and property."

There exists in this State a body of laws defining and punishing crimes and offenses, defining and enforcing rights and obligations, prescribing the forms to be followed in the prosecution of criminal and civil matters.

Two of the laws which govern in this State on the subject of contempt of court, read as follows :

1st. "The parties to any suit pending before any court of this State, shall have the right to appear and plead in person, or by their attorney at law or in fact." R. S. 122.

2d. "No fine shall be imposed without a rule on the party, to show cause, unless the circumstances of the case should, in the discretion of the court, require no delay." C. P. 132, § 2.

"The jurisdiction to punish for contempt of authority is a very delicate one, and requires to be exercised with great care and caution. The reason has been hinted at : The judge occupies the position of accuser also, and when he punishes, is dealing with conduct which is contemptuous of his own authority, and, perhaps, insulting to himself." Cooley on Torts, p. 422.

Blackstone iv. art. 131, 132 : "To specify in detail the conduct that might constitute contempt of court, would be to enumerate the ways in which misbehavior might obstruct the courts of justice. Assaults in the presence of the court, disorders of any description, which interrupt the proceedings, abuse of the court, refusal of one called as a witness to testify, neglect of official duty, or other misbehavior, by any officer of the court ; neglect to obey the orders or process of the court, etc., may all be punished as contempts. So might be any acts of violence to prevent the court convening."

"It has been held in many cases that the publication of an article in a newspaper, commenting on proceedings in court, then pending and

undetermined, or upon the court, in its relation thereto, made at a time and under circumstances calculated to affect the course of justice in such proceedings, and obviously intended for that purpose, may be punished as a contempt, even though the court was not in session when the publication was made. Cooley on Torts, p. 244, 1 M. 102; 48 N. H. 428; 3 Yeates, 438; 1 Dall. 319; L. R. 7 Eq. Cas. 49; L. R. Eq. Cas. 580; 64 Ill. 195.

The use of abusive language to the court, or any judge thereof, in a petition for a rehearing signed by a party through a licensed attorney and filed with the clerk, is a contempt of court. 11 L. 601; 8 R. 500; 1 A. 183. Punishment for contempt need not always be fine or imprisonment, particularly as concerns members of the bar, 10 M. 123, 158; 11 A. 449, but may extend to same. R. S. 1257; 1 A. 183; 8 R. 500; 25 A. 532; C. P. 132.

A judge who obstructs the mandates of the Supreme Court is in contempt of its authority, and can be fined and imprisoned. 24 A. 621.

Contempts are of two sorts. They may be committed in *facie curiæ*, and are then termed *direct;* they may be committed out of the view and hearing of the court, and are then termed *constructive* contempts. Blackstone IV, Art. 286; Hurd on Habeas Corpus, 7; Cooley on Torts, p. 424; 36 Ind. 196; 1 Salk. 84; Strange 185, 564; 1 Yeates Penn. R. 1; 11 La. 596; 8 R. 500; 36 Miss. 33; 37 N. H. 451.

A court is an incorporeal political being, which requires for its existence the presence of the judges, or of a competent number of them, and a clerk or prothonotary, at the time during which and at the place where it is by law authorized to be held, and the performance of some public act indicative of a design to perform the functions of a court. According to Lord Coke, a court is a *place* where justice is judicially administered. Co. Litt. 58, a.

The judges, when duly convened, are also called the court. 6 Vin. Ab. 484; Wheat. Dig. 127; Merlin Rep. 3 Com. Dig. 300; 8 Ib. 386; Danes Ab. Index h. t.; Bouv. Inst. Index h. t.

"A contempt of court is considered, in some degree, a *criminal* act, as much so as an assault and battery, a libel, or other offense of that kind. Blackstone and other writers treat of it under the head of public wrongs, and say that the trial must be summary so that the punishment may be prompt and the character of the tribunal vindicated." State vs. Soulé, 8 R. 505; 24 A. 121; Hurd on Habeas Corpus, p. 7.

Where the offense is committed in presence of the court, while the court is in session, within its view or hearing, it would seem that contradictory proceeding is not necessary; but the rule is quite different when the offense is committed otherwise.

Generally, a warrant should not issue except upon affidavit; but
81

these requirements would not be necessary where the judge himself was offended ; and the charge of contempt should not, in any case, be followed by sentence and imprisonment, unless *after* a rule *to show cause* has been granted and the party defendant therein heard and permitted to offer evidence and argument. A party in such case may have defenses which the offended authority may not conceive of. Such party would have a right, as any accused in a criminal case, as, for instance, to prove an *alibi* or a want of identity. It is only after such party has been heard that the court has authority to determine whether the act charged as *constructive* contempt is so, and if such, to punish by fine or imprisonment, or both, or otherwise, the defendant in the process for contempt.

We find no case in this State, in which a rule to show cause was not taken to punish for a constructive contempt.

The authorities on this point, which is of vital importance in this case, are quite numerous. R. S. 122 ; C. P. 132; 1 M. 102 ; 1 M. 297 ; 1 A. 183 ; 8 R. 500.

" *The right to a hearing is absolute, and cannot be denied in a court of any grade.*

" *A warrant issued to carry into execution a conviction for contempt by an inferior court, should show that opportunity was given the party to be heard in his defense.*" High on Ex. Rem. secs. 565, 576 ; Cooley on Torts, p. 425 ; 3 Texas *ex parte* Kilgore 247, C. App. Rep. ; 7 Wall, 364 ; 90 N. S. 337 ; *Ex parte* Pollard, L. R. 2 Pr. C. Cas. 106 ; 42 Cal. 412 ; 2 Met. Ky. 619 ; 1 Cal. 181 ; 7 Cal. 181 ; 38 Texas, 351 ; 37 Barb. 37 ; 1 Hill, 154 ; 24 Texas, 12 ; 9 Paige, 374 ; 10 Boser, 589 ; 27 How. Pr. 14 ; 36 Ind. 196 ; 38 Tex. 314 ; 3 Blatchford, 4, 6 ; 14 How. 103 ; 6 Op. Att. Gen. 93 ; 2 Paige, 103 ; 4 Paige, 284 ; 30 How. Pr. 131 ; 2 Daly, N. Y. 530 ; 9 R. I. 248 ; 5 Hun. N. Y. 428 ; 49 How. Pr. 370 ; Wall. C. C. 141, 134 ; 3 Bl. C. C. 148.

When the forms of law in such respect have not been observed, the proper remedy is by *certiorari*.

Article 857, C. P., declares :

" This mandate *(certiorari)* is only granted in cases where the suit is to be decided in the last resort, and where there lies no appeal, by means of which proceedings, absolutely void, might be set aside, or when the inferior judge has refused to hear the party or his witnesses, or has pronounced sentence without having cited them to appear."

34 How. Pr. 259; 2 Cr. C. C. 612; *Ex parte* Bennett, Martin C. C. N. Y., 16th February, 1866; State *ex rel.* Carcass, 32 A. 719.

We find that the proceedings complained of, by which the relator was sentenced, is irregular and void, and that they should be set aside. His confinement and detention thereunder should last no longer.

This view of the case dispenses us from considering the questions

next presented, whether a contempt was actually committed. It is enough, for the purpose of this case, that we find that the proceeding was not in accordance with the requirements of the Constitution, of the law, and of the jurisprudence on the subject.

We do not think it necessary to elaborate, to apply the principles and authorities alluded to in this opinion, to the case before us, as the mere statement of the law and the facts conduce to our conclusion.

We have no doubt that our learned brethren of the District Court will readily concur in our views, as to the general necessity of hearing before condemnation, in cases of contempt committed *extra faciem curiæ*. They were, no doubt, in this case, misled by the fact that inasmuch as the offense here charged took place in the personal presence and hearing of the judge, it was assimilated to a contempt *in faciem curiæ*, in which hearing would be unnecessary. The only reason for the dispensation of contradictory proceeding in the latter case, lies, as already indicated, in the necessity of immediate action in vindication of the police and good order of the Court, and that reason does not apply.

It is, therefore, ordered, adjudged and decreed that the proceeding by which the relator was sentenced to an imprisonment of ten days, and to a fine of fifty dollars, and which is the object of the complaint herein, be annulled and avoided, at respondent's costs.

Mr. Justice POCHÉ having been prevented by illness from hearing the argument of the case, takes no part in this decision.

---

BERMUDEZ, C. J. The motion for a certified copy of the opinion and decree herein rendered, is not resisted by the respondent, who answers verbally that he has no cause to show why the motion should not be granted.

The article of the Code of Practice 911, having reference to applications for a rehearing, cannot be construed as intended to embrace cases like the instant one, which was not in existence at the adoption of that Code, as it originates under Article 90 of the Constitution now in force.

The effect of the remedy granted in this case is the same as in *habeas corpus* cases, in which, under Article 824 C. P., if it appear to the judge that there is no cause of arrest and confinement, or if he think that such arrest and confinement cannot legally continue, he shall *immediately* set the prisoner at liberty.

Were it otherwise, the remedy granted would be destructive of the relief sought and obtained, as the relator would have to remain in confinement until after the expiration of the ten days for which he was committed.

The difference, if any exist, between the two cases, is difficult to perceive. We have been shown, and we discover none.

*Ubi eadem ratio, eadem lex.*

We think, under the exceptional circumstances of this case, the copy asked can be issued, as the judgment is executory.

It is therefore ordered that the motion for such copy be granted, and that the copy asked be issued, duly certified by the clerk of this Court.

---

NOTE OF THE REPORTER.—The following Decisions were omitted by error from their proper place in this volume, and are reported here for that reason. The first case, viz: Widow V. M. Benavis vs. Jose Barba and Sheriff, was decided in New Orleans, in May, 1880. The others were all decided at Opelousas, in July, 1880.