BURNS & HAMILTON CO. et al. v. DENVER INV. CO.   (No. 9013.)

(Court of Civil Appeals of Texas. Ft. Worth.
Oct. 25, 1919.. Rehearing Denied
Dec. 6, 1919.)

1. MECHANICS' LIENS ⬅➡122 — VERBAL NOTICE OF MATERIAL FURNISHED ·NOT SUFFICIENT.

Verbal notice, when either given to the owner or his agent, is not a sufficient compliance with Vernon's Sayles' Ann. Civ. St. 1914, art. 5623, as it read prior to amendments by the Thirty-Fourth and Thirty-Fifth Legislatures (Acts 34th Leg. [1915] c. 143, and Acts 35th Leg. [1917] c. 17 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5623, 5639a]), providing that persons furnishing materials to contractors could obtain a lien by giving written notice to the owner or his agent.

2. MECHANICS' LIENS ⬅➡120—No NOTICE TO CONTRACTOR NECESSARY OF MATERIALS FURNISHED SUBCONTRACTOR.

One who furnished material to a subcontractor to be used in the construction of a building may, by complying with provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 5623, as it.read prior to the amendments by the Thirty-Fourth and Thirty-Fifth Legislatures (Acts 34th Leg. [1915] c. 143, and Acts 35th Leg. [1917] c. 17 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5623, 5639a]), fix a lien upon the property and secure the payment of the price of the material so furnished, without regard to the original contractor; the latter not being entitled to written notice referred to in such statute.

3. MECHANICS' LIENS ⬅➡120 — AGENT TO WHOM NOTICE OF MATERIALS FURNISHED MAY BE GIVEN.

The agent of the owner of a building being constructed to whom notice may be given under Vernon's Sayles' Ann. Civ. St. 1914, art. 5623, as it read prior to the amendments by the Thirty-Fourth and Thirty-Fifth Legislatures (Acts 34th Leg. [1915] c. 143, and Acts 35th Leg. [1917] c. 17 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5623, 5639a]), relating to giving of notice of the owner of a building of materials furnished, must be such agent as the owner has expressly vested with authority to receive such notice, or referred to as the one to whom such notice might be given, or be an agent of general authority in such managerial or directing situation with reference to the construction of the building as constitutes him the alter ego of the owner.

4. MECHANICS' LIENS ⬅➡281(5) — FINDING THAT NO NOTICE OF MATERIALS FURNISHED REACHED OWNER SUSTAINED BY EVIDENCE.

In an action to foreclose a mechanic's lien, a finding that the owner had not been served with a written notice of materials furnished as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 5623, as it read prior to the amendments by the Thirty-Fourth and Thirty-Fifth Legislatures (Acts 34th Leg. [1915] ·c. 143, and Acts 35th Leg. [1917] c. 17 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5623, 5639a]), held sustained by the evidence.

5. MECHANICS' LIENS ⬅➡279 — BURDEN OF PROOF UPON MATERIALMEN TO ESTABLISH NOTICE TO OWNER.

In a proceeding to foreclose a mechanic's lien, the burden of proof is upon materialmen to establish the notice required by Vernon's Sayles' Ann. Civ. St. 1914, art. 5623, as it read prior to the amendments by the Thirty-Fourth and Thirty-Fifth Legislatures (Acts 34th Leg. [1915] c. 143, and Acts 35th Leg. [1917] c. 17, [Vernon's Ann. Civ. St. Supp. 1918, arts. 5623, 5639a]), upon the owner, or his duly authorized agent.

---

6. MECHANICS' LIENS ⬥281(5)—ARCHITECTS NOT SHOWN TO BE AGENTS UPON WHOM NOTICE OF MATERIAL FURNISHED COULD BE SERVED.

In a proceeding to foreclose a mechanic's lien, evidence *held* insufficient to show that architects had either express or implied authority to receive notice of materials furnished, required by Vernon's Sayles' Ann. Civ. St. 1914, art. 5623, as it read prior to amendments by the Thirty-Fourth and Thirty-Fifth Legislatures (Acts 34th Leg. [1915] c. 143, and Acts 35th Leg. [1917] c. 17 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5623, 5639a]).

Appeal from District Court, Tarrant County; R. E. L. Ray, Judge.

Suit by the Burns & Hamilton Company against the Denver Investment Company and others. S. D. Burns and others were substituted as parties plaintiff. From an adverse judgment, the plaintiffs appeal. Affirmed in part and undisturbed in part.

Marvin H. Brown and Ocie Speer, both of Ft. Worth, for appellants.

McCart, Curtis & McCart, of Ft. Worth, for appellees.

BUCK, J. This suit was originally filed December 24, 1913, by Burns & Hamilton Company, a corporation, against the Denver Investment Company, a corporation, the Texas Building Company, a corporation, and Sam Wiley. Plaintiff alleged that it had furnished paint materials to the value of $1,084.44, which were used in the construction of the building owned by and built for the Denver Investment Company, hereinafter called the "Investment Company." It alleged that the Investment Company contracted with the Texas Building Company, hereinafter called "Building Company," to construct for the Investment Company a certain office building in the city of Ft. Worth, the Building Company to furnish the material and labor to be used in the construction of said building. It further alleged that the Building Company contracted with defendant Sam Wiley to furnish the labor and material to do the painting and interior finishing and varnishing, etc.; that plaintiff sold and delivered to said Wiley, subcontractor, the material set out in the itemized statement, which, on October 15, 1913, was recorded in the office of the county clerk of Tarrant county, said statement showing the kinds and quantities of material furnished, together with dates of delivery and prices charged therefor, as well as all offsets, payments, and credits due thereon. It further alleged that it delivered to the Investment Company as well as to its architects, agents, and representatives, Sanguinette & Staats, who were in charge of said building, notice in writing of each and every item of said

materials furnished to said subcontractor and used on said building. Wherefore it sought a personal judgment against each of the defendants named and a foreclosure of a materialman's lien against the premises described.

The original answers of the defendants the Investment Company and the Texas Building Company were filed January 6, 1914. An amended petition was filed September 24, 1917. On September 28, 1917, the Investment Company filed an amended answer, containing, among other things, a plea in abatement, which alleged that Burns & Hamilton Company, a corporation, had ceased to do business on July 2, 1914; that its permit to do business was forfeited on said date by the Secretary of State because of its failure to pay the franchise tax due for the year beginning May 1, 1914. On the same date, Sam D. Burns, Henry Hamilton, and F. H. Haddix filed their petition setting up the fact that they had at all times constituted all of the stockholders of the Burns & Hamilton Company, a corporation, and that said corporation had failed to pay its franchise tax for the year 1914, and had not paid the same, and had ceased to do business in the state of Texas; wherefore petitioners prayed that they might be joined as parties plaintiff in the cause of action and might be permitted to proceed to litigate said cause of action and reduce the claims therein to judgment for the use and benefit of the stockholders of the disqualified corporation and its creditors. This substitution of parties plaintiff seems to have been permitted by the court, and no direct attack is made against such action by the court on the part of the appellees, though the appellee Investment Company denies the right of the stockholders to prosecute the suit for reasons later noted.

The cause was tried before the court without the intervention of a jury. The court found, among other things: That the material described in plaintiff's petition was furnished to Wiley without any written agreement, and that no part of said account had been paid. That Sanguinette & Staats were the architects employed by the Investment Company to draw the plans of the said building, and later, on the demand of the Trust Company which loaned the Investment Company $100,000 on said building, said architects were employed by the Investment Company to supervise the construction of said building, but they did not have charge of the construction of said building or have the power to employ or discharge subcontractors or workmen thereon. That on or about the 8th day of October, 1913, the plaintiff served written notice with an itemized statement of its account to the amount of $1,070.84 on said Sanguinette & Staats, and filed an af-

fidavit with an itemized statement of its account on the 14th day of October, 1913, in the office of the county clerk of Tarrant county, as provided by statute. That no written notice except the notice to Sanguinette & Staats of the amount claimed by plaintiff was ever served on the Investment Company, or any agent of said company. That on the ———— day of ————, 1913, Sanguinette & Staats prepared a written statement addressed to the Trust Company and to the Investment Company setting out in detail the contract price of said building and its estimate of the payments made thereon, but that the evidence failed to show that said document was delivered to said Investment Company or placed in the mail addressed to said company. That after July 2, 1914, Burns & Hamilton Company ceased to do business, and that its affairs had been wound up and all of its debts satisfied except one purported claim on which suit has been brought and which Burns & Hamilton Company claimed it did not owe. That the Investment Company paid to the Building Company, the original contractor, $156,000 for the construction of said building, which was about $30,000 in excess of the original contract price, of which amount the said Investment Company received back from the Trust Company $100,000, less commission. That all amounts due by said owner under its contract for the construction of said building and all extras thereon had been paid prior to the filing of the suit. That the work done by Wiley on said building was defective, and because of such defects said owner had been damaged in an amount in excess of or equal to the claim sued on by Burns & Hamilton Company, and that said Wiley had been paid in full the amount due him under his contract if said work had been done according to the contract, with the exception of the amount of the claim herein mentioned. That, at the time said architects were employed to supervise said building, the owner of said building had already paid the original contractor in the sum of $25,000.

Upon the findings of fact, the court concluded:

(1) That the written notice of plaintiff's claim served on the architects was such notice as would bind the owner of the property under the statutes providing for notice of materialmen to be given as a prerequisite to securing liens on property for material furnished therein.

(2) That the forfeiture of the right of Burns & Hamilton Company to do business had been made in accordance with the statutes, and that thereafter the right of said corporation to do business in Texas and to maintain this suit immediately ceased.

(3) That the contract between Burns & Hamilton Company and Sam Wiley was barred by the two-year limitation accruing after the debt matured, and the stockholders of said plaintiff corporation were made parties to this suit after said period of limitation had run against them, and that they could not now recover on the debt sued on or foreclose the lien claimed on or against said building belonging to the Investment Company.

(4) That said stockholders had been made parties plaintiff more than three years subsequent to the forfeiture of the charter of said Burns & Hamilton Company, hence they could not recover on the debts sued on or foreclose the lien on said property as trustees for the benefit of the Burns & Hamilton Company.

(5) That if said debt and lien were not barred by limitation, said stockholders could foreclose said lien to the amount of said debt, although neither the owner nor the Building Company owed said Wiley anything under its contract with him.

(6) That if the debt sued on and the lien against said property were not barred by limitation, said stockholders could foreclose said lien to the amount of said debt, although said Wiley was never legally made a party to this suit and had been dismissed from the same.

(7) That hence said stockholders nor said Burns & Hamilton Company could recover on said debt nor foreclose the lien claimed against any of the defendants to this suit.

From a judgment in favor of the Investment Company and against the defendant Building Company in the sum of $1,322.31, the plaintiffs have appealed.

It will probably conserve time for us to first notice appellee Investment Company's cross-assignments. The first is that the trial court erred in his conclusion that the original notice of Burns & Hamilton Company's claim, served on Sanguinette & Staats, was such notice as would bind the owner of the property under the statutes securing liens on the property for material furnished. Article 5623, V. S. Tex. Civ. Stats., prior to the amendments by the Thirty-Fourth and Thirty-Fifth Legislatures (Acts 34th Leg. c. 143, and Acts 35th Leg. c. 17 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5623, 5639a]), reads as follows:

"Any person, firm, or corporation, who may furnish any material to any contractor, subcontractor, agent, or receiver, to be used in the erection of any house, building or improvement, or to repair any house, building or improvement, or to construct or repair any railroad, or its properties, by giving written notice to the owner or his agent of such house, * * * of each and every item furnished, and by showing how much there is due and unpaid on each bill of lumber or material by said lumberman, corporation, or materialman under said contract, or at any time within ninety days after the indebtedness shall have accrued, may fix and secure the lien provided for," etc.

217 S.W.—46

[1-3] There is some evidence tending to show that verbal notice was given to some of the officers of both the Investment Company and the Building Company, in certain instances the same men being officers of both companies. But verbal notice, when given either to the owner or his agent, is not a sufficient compliance with the article above quoted. Glass & Paint Co. v. Iron Co., 147 S. W. 620, same case by the Supreme Court in 108 Tex. 346, 193 S. W. 1072; Herring-Hall-Marvin Co. v. Kroeger, 23 Tex. Civ. App. 672, 57 S. W. 980, writ refused. One who furnishes material to a subcontractor to be used in the construction of a building may, by complying with the provisions of the above cited article, fix a lien upon the property and secure the payment of the price of the material so furnished without regard to the original contractor. He does not have to give written notice to the original contractor, but is required to give such written notice to the owner of the property. Padgitt v. Dallas Construction Co., 92 Tex. 626, 50 S. W. 1010. The agent to whom notice may be given, under the statute, must be such agent as the owner has expressly vested with authority to receive such notice, or referred to as the one to whom such notice might be given, or be an agent of general authority, in such managerial or directing situation with reference to the construction of the building as would constitute him the alter ego of the owner. As said in 2 Mechem on Agency, § 1831, p. 1416:

"In other words, the knowledge or notice must come to an agent who has authority to deal in reference to those matters which the knowledge or notice affects, and whose duty it therefore is to communicate it to his principal."

It is said in 1 Mechem on Agency, § 992, p. 715:

"An architect, engineer, or other superintendent employed to supervise the construction of a building, railroad, or other similar structure, is usually an agent with limited authority. His authority, of course, may be given a wider range, but, in the absence of such an enlargement, his authority and duty are confined to seeing that the work is done in accordance with the plans and specifications agreed upon."

In Seeling v. Alamo Iron Works, 173 S. W. 520, the Court of Civil Appeals for the Fourth District held that the architect employed by the owner in connection with the erection of a building, and who was authorized to receive and file accounts showing what material was being furnished the contractor, and whose duty it was to file such accounts or bills, which were issued in duplicate, one to the owner and one to the contractor, and to give estimates from time to time, and who showed the owner such estimates, was such an agent as contemplated in article 5623, supra. The purpose of giving this notice is that the owner may withhold from the contractor money that should be paid to those furnishing the latter with labor or material. Humphrey's Texas Mechanic Lien Laws, p. 72; Nichols v. Dixon, 99 Tex. 263, 89 S. W. 765. The burden to establish the agency and the extent thereof is on him who relies on it. Baker v. Machinery, 84 S. W. 661; McCormick v. Bush, 38 Tex. 314. The word "agent," as used in the statute, means the person who has the power to act for the principal with reference to the very subject-matter to which the notice relates. M., K. & T. Ry. Co. v. Belcher, 88 Tex. 549, 32 S. W. 519. See Carpet Co. v. Houston Hotel Ass'n, 197 S. W. 1139, for facts held not vesting the supervising architect with general authority as agents so as to bind owner. Likewise, Renton v. Monnier, 77 Cal. 449, 19 Pac. 820; Drummond v. Rice, 27 Pa. Super. Ct. 226, cited in 27 Cyc. 115; Langenheim v. Anschultz-Bradberry Co., 2 Pa. Super. Ct. 285, cited also in 27 Cyc. 115. Upon the question of authority of the architects in the instant case, we will refer to the evidence. Wm. Capps, vice president of the Investment Company, testified:

"I talked the matter over with Sanguinette & Staats and made a verbal agreement with them to go ahead, because the money was being held up. * * * Sanguinette & Staats were going ahead in response to the demand from St. Louis, from the Trust Company. I never made any agreement with Sanguinette & Staats that they should be the general agent of the Denver Investment Company or any other kind of agent; I wouldn't do that at all, because Mr. Taylor was there to see after it, and Mr. Waggoman was looking after it. After that Mr. Taylor put in the work, and Mr. Taylor was watching over the construction. * * * Q. You do know that these payments weren't made unless Sanguinette & Staats made the estimates—checked over them. A. No, I know to the contrary; we paid the money for the building as it was constructed, and we would then go to Sanguinette & Staats in order to get the money from the loan company. We borrowed the money from the bank and paid cash for the work as it was constructed, and we would afterwards get the money from the loan company."

Ammon Helfensteller, architect in charge and of the firm of Sanguinette & Staats, testified to a letter from the Investment Company, signed by James T. Taylor for the company, confirming the employment of Sanguinette & Staats "as architects and superintendents of the building." He further testified that—

It was the duty of said firm of architects "to check up all the estimates made by the contractors before payment was allowed. We checked over the items of material, and later we would issue certificates * * * to the Denver Investment Company for payment by the Mortgage Trust Company. This was done in each and every instance after the third payment, after the $25,000 had been paid. * * * There were notices of amounts claimed to be due

for material furnished on the building by Burns & Hamilton Company served on Sanguinette & Staats. * * * This notice I have here is for $1,070.84. * * * I know personally that subsequent to that notice there was another notice served for the full amount of the claim. * * * The Denver Investment Company first made a contract with our firm to make the plans, and then made the contract finally to take us as superintendents. * * * I didn't make the payments, but I checked the items."

[4, 5] The evidence is rather uncertain whether the notices served on Sanguinette & Staats by Burns & Hamilton Company ever reached the Investment Company or the Building Company. The court found that they never did, and we think the court was justified in this finding. The burden of proof was upon plaintiffs to establish notice upon the owner or its duly authorized agent, and if the evidence upon this issue left the matter in doubt the burden has not been discharged.

[6] There is no evidence in the record in our opinion tending to establish that any express authority was given the architects to accept the notice provided for in the statute, nor do we think that any implied authority is shown. Hence we conclude that appellee's first cross-assignment must be sustained. In the absence of any written notice upon the owner, no lien was fixed. This conclusion renders it unnecessary to pass upon other questions presented in appellant's assignments or in appellees' cross-assignments.

The judgment is affirmed as to the issues between appellants and appellee Denver Investment Company, and undisturbed as to judgment against the Texas Building Company.

Affirmed in part and undisturbed in part.

&approx;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes