**KOEHLER et al. v. STANDARD SANITARY MFG. CO.  (No. 688.)**

(Court of Civil Appeals of Texas. Beaumont. May 7, 1921. Rehearing Denied May 18, 1921.)

1. **Mechanics' liens ⬤⟞315—One furnishing materials to subcontractor for use in building is "furnisher of material" within bond of chief contractor.**

Where a building contractor executed a bond conditioned in part upon prompt payment to all subcontractors, "furnishers of material," etc., and plaintiff furnished and delivered on the premises to a subcontractor certain material that went into the house, for the express purpose of being so used, plaintiff was "a furnisher of material" within the bond.

2. **Mechanics' liens ⬤⟞315—One furnishing material to subcontractor may sue chief contractor on bond in favor of furnishers of material.**

Where a building contractor executed a bond partly conditioned upon payment to all furnishers of material used in the building, plaintiff, which furnished materials for use in the building to a subcontractor, was in privity with the chief contractor and could sue him on the bond.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by the Standard Sanitary Manufacturing Company against Miss L. S. Koehler and others. Judgment on instructed verdict for plaintiff, and certain of the defendants appeal. Affirmed.

Maco & Minor Stewart and R. W. Houk, all of Houston, for appellants.

Campbell, Myer & Freeman, of Houston, for appellee.

WALKER, J. This suit was brought by the plaintiff, Standard Sanitary Manufacturing Company, against Miss L. S. Koehler, A. J. Witt, H. T. Read, William Murphy, and Paul Lobit, to recover the sum of $1,120.83, as a balance due for plumbing material, sold by plaintiff to Witt. This material was used in the construction of a building erected by the defendant Read as contractor, for defendant Koehler as owner. The material was ordered and delivered on the premises to defendant Witt, who was the plumbing subcontractor on the building. The other defendants, Murphy and Lobit, were sued as sureties on the contractor's bond. The trial was before a jury, and the court instructed a verdict for plaintiff for the amount sued for against the defendants Witt, Read, Murphy, and Lobit, and against defendant Koehler for a small balance of the contract price remaining in her hands. Only the defendants Read, Murphy, and Lobit have appealed.

The sections of the contractor's bond material to this appeal are as follows:

"Bond.

"Know all men by these presents:

"That H. T. Read, of Galveston, Galveston county, Texas, as principal, and William Murphy and Paul Lobit, as sureties, are held and firmly bound unto Miss Louise S. Koehler of Houston, Texas, as well as to all subcontractors, workmen, laborers, mechanics and furnishers of material who shall furnish or perform any labor, or who shall furnish any material, on the work, building or improvement contemplated in the certain contract hereinafter mentioned in the sum of eleven thousand dollars, lawful money of the United States of America, well and truly to be paid to the said Miss Louise S. Koehler of Houston, Harris county, Texas, and to all subcontractors, workmen, laborers, mechanics and furnishers of material who may furnish material for, or perform or furnish labor on, the work, building or improvement contemplated in the contract hereinafter mentioned, her heirs, executors and administrators, as their interest may appear. * * *

"The condition of this obligation is such that if the said H. T. Read shall well and truly keep, perform and fulfill all and every the covenants, conditions, stipulations and agreements to be kept, performed and fulfilled by H. T. Read, as set forth and contained in a certain contract entered into by and between the said H. T. Read and the said Miss Louise S. Koehler dated the third day of February, 1917, for the construction of the work, building or improvements mentioned in said contract * * * and if the said H. T. Read shall promptly make payment to all subcontractors, workmen, laborers, mechanics, and furnishers of material, or labor, in the prosecution of the work provided for in said contract, then this obligation shall be void, but otherwise shall remain in full force and effect. * * *"

The parties agree to the following facts:

"(A) That the building contracted for was erected in substantial compliance with the contract.

"(B) That the defendant Read, after the execution of the contract with defendant Koehler, entered into a contract with defendant A. J. Witt, by which Witt, as subcontractor, undertook the completion of the plumbing work on said building, agreeing to furnish, or cause to be furnished, all necessary labor and material for the total price of $3,995.

"(C) That at the time of the making of the agreement between the defendants Read and Witt, the plaintiff was notified that defendant Witt was subcontractor for the plumbing work on the said building.

"(D) That defendant Witt was a master plumber or contracting plumber, residing in Galveston, Tex., and had a plumbing shop in Galveston, Tex. During the time for some months prior to and during the erection of the Koehler Building, defendant Witt had contracted for and done the plumbing work on several jobs both in Houston and in Galveston. It was Witt's practice to purchase the supplies and material for these jobs as he needed it

from some plumbing supply house such as plaintiff, and he usually purchased his supplies and material from plaintiff. Before making the subcontract with Read, defendant Witt had submitted his bill of material to plaintiff for quotation of price and had secured from plaintiff what is termed a 'blanket' on the material specified—meaning by that term that the supply house would protect the plumbing contractor against any raise in price of the material specified during the course of construction of the building on which it was to be used.

'[(E) That plaintiff sold and delivered to defendant A. J. Witt on the premises on which the Koehler Building was being erected all of the material and supplies set out in the itemized account attached to plaintiff's petition, at the prices and on the date named in said account; that the prices shown on said account were the prices agreed to be paid by defendant Witt for said material and supplies and were also the reasonable market value in Houston of the respective items of material and supplies named on the respective dates shown; the aggregate amount of said material and supplies so sold and delivered as shown by said account being $1,120.83; that as said goods were delivered they were charged on plaintiff's books against the account of A. J. Witt, which account is more fully described below; that all of said material and supplies was delivered by plaintiff to Witt at said Koehler Building and was actually used in the construction and completion of said building; that plaintiff has not received payment for said material and supplies or any part thereof.

"(F) That for several years defendant Witt had been purchasing material and supplies from plaintiff from time to time on open account. These purchases were sometimes for material for use in the plumbing shop, but usually for use on different building jobs on which Witt had the plumbing contracts or subcontracts. All items sold to Witt by plaintiff were charged on plaintiff's books to one account kept with Witt, said account being in the book called 'Accounts Receivable Ledger,' and the account itself being entered 'A. J. Witt.' All items sold by plaintiff to Witt were charged to this account irrespective of the jobs on which they were to be used or the place of delivery and all payments made by Witt were credited to this account. It was Witt's practice to make his payments to plaintiff without directing their application to any particular item or items. All of the plumbing material and supplies used in the construction of the Koehler Building were sold by plaintiff to Witt upon open account, delivered to Witt at the Koehler Building and charged to the same account described above; no distinction being made on account between items delivered to the Koehler Building for Witt and items delivered to other jobs for Witt. Plaintiff considered Witt's credit good and the material was sold to him on the strength of his credit.

"(G) On November 26, 1917, after completion of said building, plaintiff duly filed its account as provided by statute in the office of the county clerk of Harris county, Tex., for the fixing of its materialman's lien upon the said building and gave due notice thereof to defendants Koehler and Read. At said time defendant Koehler owed defendant Read a balance of $266 on said contract, and since said time neither of said defendants Koehler or Read have paid out any amount on the said building.

"(H) All parties admitted that defendant Witt was indebted to plaintiff in the full sum claimed by plaintiff for said supplies and material."

[1] Appellee actually furnished the material that went into the house and delivered it to Witt on the premises. This was done after it knew that Witt had the contract and had submitted to him a guaranteed price on this particular job. Clearly, it was "a furnisher of material" within the provisions of the bond. The material was sold to Witt for the express purpose of being used on this contract—furnished him as the subcontractor. Witt was an old customer. It had confidence in his integrity and ability to pay. Though protected both by the terms of Read's bond and by the statute, it is not to be presumed that the sale of goods would have been made had it expected to collect from the bondsmen at the end of a lawsuit. Appellant insists that this material was furnished by Witt, that he was the owner of the material, and that appellee parted with the title when the same was delivered to Witt on the premises. Of course, it parted with the title to the material, and, of course, Witt became the owner of the material. But appellee was secured in the payment of the bill by the provisions of Read's bond. Wilson v. Sherwin-Williams Paint Co., 110 Tex. 156, 217 S. W. 372; Burns & Hamilton Co. v. Denver Inv. Co., 217 S. W. 719; First Nat. Bank v. Lyon-Gray Lbr. Co., 110 Tex. 162, 217 S. W. 133; U. S. Fid. & Gy. Co. v. Thomas, 156 S. W. 573; Texas Glass & Paint Co. v. Crowdus, 108 Tex. 346, 193 S. W. 1072; Bullard v. Norton, 107 Tex. 571, 182 S. W. 668; Fennell v. Trinity Cement Co., 209 S. W. 796; Mankin v. U. S., 215 U. S. 533, 30 Sup. Ct. 174, 54 L. Ed. 315; Fox v. Christopher & Simpson Iron Works Co., 199 S. W. 833; American Ind. Co. v. Burrows Hardware Co., 191 S. W. 574.

[2] Under the terms of the bond, there was privity between Read and appellee. This bond ran in favor of "furnishers of material" and was partly conditioned that Read should "promptly make payment to all * * * furnishers of material, or labor, in the prosecution of the work provided for in said contract." Appellee had a cause of action under the terms of this bond. General Bonding & Cas. Ins. Co. v. Wapples Lbr. Co., 176 S. W. 651; Am. Ind. Co. v. Burrows Hdw. Co., 191 S. W. 574.

We have not discussed appellant's rights under the statute, because they have predicated their appeal on the following proposition advanced by them:

"The whole case is determined by the one question, that is, who is the furnisher of the material?"

Affirmed.