HAMITER, Justice.
A writ of certiorari with a stay order, as well as a rule to show cause, was issued herein for the purpose of permitting a review of the proceedings in which relator, James F. Shoemaker, was held in contempt by the Judge of the Juvenile Court of Caddo Parish, and immediately remanded to jail to serve a sentence of ten days, for his failure to produce his child in court as the judge had ordered. The record furnished us in compliance with the writ of certiorari, together with the return of the Judge, discloses the circumstances hereinafter described.
In July, 1955, while relator Shoemaker was in Japan as a member of the United States Air Force, his wife (Mrs. Patricia Love Shoemaker) deserted the child of their marriage (Christine), as well as two other children born to her of a previous union. Thereupon the Juvenile Court for the Parish of Caddo, after finding that they were neglected, made all of those children wards of the court and placed them in the custody of their maternal grandmother, Mrs. Laeunia Love, a resident of Caddo Parish.
Shortly thereafter relator returned to this country and obtained an amendment to the decree so as to grant the custody of the children to himi and his wife, subject to orders of the court. However, in November, 1955 they separated and, since relator was still in the armed forces, custody was again awarded to the maternal grandmother.
In July, 1957 the decree was again amended by giving to relator the temporary care of his daughter, Christine, “subject to the Court’s continuing jurisdiction and further orders * * * ”; and, at this time, relator was granted permission to take the child to the home of his mother, Mrs. Monica Shoemaker, in Kent, Ohio, for an indefinite period. In fact, according to a letter in the record, sent to relator by the Court’s Chief Administrative and Probation Officer, A1 Mazur, the taking of the child to Ohio was directed by the judge.
In December, 1957 the above named probation officer filed a petition in the Juvenile Court requesting that the case be reopened “for the purpose of determining the suitability of the present custodial care and to consider any changes which may be, in the Court’s opinion, necessary to insure the child’s best interest.” No allegation was made that the care then afforded Christine was improper or inadequate.
To the petition relator filed certain exceptions which were overruled. The judge *222 then, after granting a continuance, ordered that the child be present in court and the case heard on its merits on February 25, 1958.
On that date Shoemaker appeared in court without Christine, stating that he could not produce her because of legal proceedings which had been commenced in Ohio by his mother. Simultaneously, he exhibited a copy of a petition filed by Mrs. Monica Shoemaker in the Juvenile Court of Portage County, Ohio, wherein she sought to be awarded the legal custody of the child.
Thereupon, the judge called relator for cross examination and, according to the former’s return filed here, the following occurred: “* * * After a few preliminary questions he was asked specifically by your respondent Judge to identify Mrs. Monica Shoemaker, the person who was alleged to have filed some action in the Juvenile Court of Portage County, Ohio, seeking custody of the child, Christine Shoemaker. He answered that she is his mother. The Court then asked him whether or not his mother, Mrs. Monica Shoemaker, had instituted the action in Ohio on her own initiative or if he had requested and directed her to do so. Whereupon he answered that she had filed the action upon his request and direction. Whereupon he was immediately found by the Court to be in contempt of the Juvenile Court for Caddo Parish, Louisiana, and was thereupon sentenced as has already been shown.”
The Judge further states in his return: “That the paternal relatives, under the ■direction of and in collusion with relator, James F. Shoemaker, have now attempted to ■defeat and obstruct the jurisdiction of the Juvenile Court for the Parish of Caddo, Louisiana, by .the filing in the State of Ohio some purported action to obtain the custody •of the child in a civil proceeding in that State. All of which was done after James F. Shoemaker was ordered to return the child to the Juvenile Court for Caddo Parish, Louisiana, for further hearing.”
In a reply to such return relator denies having testified that he requested and directed his mother to file the petition. He states that the judge “asked him if he had discussed the matter with his mother and that he had replied in the affirmative. That the contents of the conversation were not asked for nor were they divulged.”
 Relator concedes, as he must, that the Juvenile Court has the authority to hold in contempt and punish a person who-, without reasonable cause, violates its valid orders. LRS 13:1576 and 1590. But he challenges the procedure resorted to in the instant matter, urging that since the alleged contempt was indirect or constructive— that is, committed outside the presence of the Court — -he was entitled to citation and a hearing in accordance with the provisions of LRS 15:11. That section authorizes every court “ * * * to punish, as being a contempt, every interference with or disobedience of its process or orders, as well as every act interrupting or tending to interrupt its proceedings, or impairing the respect due to its authority. * * * ” •However, it also recites: “ * * * provided that no one shall be punished for any contempt committed outside of the presence or hearing of the court, except after hearing upon a rule to show cause why he should not be punished for such contempt, served upon him at least twenty-four hours before such hearing.”
From the aforedescribed circumstances, particularly those disclosed by the quoted excerpts from the mentioned return, it is clear that the judge considered and adjudged relator to be in contempt for allegedly conniving with his mother in Ohio (requesting and directing her to file the custody petition), after he had been ordered to return the child, with the view of defeating and obstructing the court’s jurisdiction.. This being true the alleged misconduct obviously occurred out of the presence of the court. Therefore, according to the above quoted proviso of LRS 15 :11, relator Shoemaker, before being adjudged in con *223 tempt and sentenced therefor, was entitled to a hearing upon a rule to show cause after twenty-four hours’ notice. And since he was not afforded such a hearing the assailed judgment of contempt and the imposed sentence were nullities. See State ex rel. De Buys v. Judges of Civil District Court, Parish of Orleans, 32 La.Ann. 1256; Fellman v. Mercantile Fire and Marine Insurance Company (In re Cooke), 116 La. 733, 41 So. 53 and State ex rel. Williams v. Louisiana Public Service Commission et al. (In re Williams), 161 La. 293, 108 So. 487.
For the reasons assigned the writs heretofore issued are now made peremptory, and it is ordered, adjudged and decreed that the judgment of contempt rendered against relator, James F. Shoemaker, and the sentence imposed on him be annulled and set aside, this without prejudice to the right of the respondent judge to proceed according to law.